630 A.2d 753

**Donna Michelle FORMAN**

v.

**MOTOR VEHICLE ADMINISTRATION.**

**No. 132, Sept. Term, 1992.**

Court of Appeals of Maryland.

Sept. 16, 1993.

202

Robert C. Bonsib, Marcus & Bonsib, Greenbelt, all on brief, for appellant.

John R. Hargrove, Jr., Asst. Atty. Gen., Glen Burnie, J. Joseph Curran, Jr., Baltimore, both on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

Before this Court is the propriety of an administrative law judge's 120–day suspension of the petitioner's driver's license under Maryland's implied consent statute, Maryland Code (1977, 1992 Repl.Vol.), Transportation Article, § 16–205.1.[1] The statute provides that

> "[a]ny person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take [an alcohol concentration] test if the person should be detained on suspicion of driving or at-tempting to drive while intoxicated, while under the influ-ence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle

---

1. All statutory references herein are to Maryland Code (1977, 1992 Repl.Vol.), Transportation Article, unless otherwise noted.

safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title [concerning commercial vehicles]."

§ 16–205.1(a)(2).

Section 16–205.1(b)(1)(i)(2)(A) imposes a mandatory 120–day suspension when a person who is detained for a first-time offense refuses to take a Breathalyzer test upon request of the detaining officer. Because this strict penalty is designed to encourage licensees to take, rather than to refuse, such alcohol tests, the statute also requires that the detaining officer advise the licensee of the mandatory suspension resulting from refusal so that the licensee can make a fully informed choice about taking the test. *See* § 16–205.1(b)(2) ("[T]he police officer shall ... (iii) [a]dvise the person of the administrative sanctions that shall be imposed for refusal to take the test....").

The petitioner, Donna Michelle Forman, who was detained upon suspicion of driving while intoxicated and subsequently given a 120–day suspension for refusing to take the test, makes three principal claims. Forman's first claim is that the detaining officer negated the required warnings by leading her to believe that the 120–day suspension was not mandatory, but in fact could be modified by the Motor Vehicle Administration (MVA) after a hearing. Forman's second claim is that the officer induced her to refuse the test by promising that upon her refusal he would take her to a friend's house, rather than to the police station, so that she might avoid telling her husband she had been charged with drinking and driving. Finally, Forman claims that the administrative law judge (ALJ) improperly refused her request to subpoena the detaining officer to testify at an administrative hearing about the conversation between the officer and Forman which Forman contends constituted both the negation and the inducement.

The issues which Forman raises are important and we will therefore discuss each one. In light of this discussion, we must remand the case for rehearing. A remand is necessary because the ALJ failed (1) to make adequate factual findings

on the issues Forman raises, and (2) to explain his ultimate decision. Our basis for disposing of the case in this fashion will become apparent after an initial review of the facts and the proceedings below.

## I.

On February 23, 1992, Officer John Jacobs of the Howard County Police Department stopped Forman on suspicion of driving while intoxicated. After stopping Forman's vehicle, Officer Jacobs detected an odor of alcohol and directed Forman to perform certain field sobriety tests. As a result of the way in which Forman performed these tests, Officer Jacobs placed her under arrest. Forman then signed the MVA's "Advice of Rights" form, the DR–15, certifying that she had "read or [had] been read the Advice of Rights for a test and [had] been advised of administrative sanctions that shall be imposed for refusal to take a test or for a test result indicating an alcohol concentration of 0.10 or more." She refused to take the Breathalyzer test. Pursuant to § 16–205.1(b)(3), Officer Jacobs confiscated her license, served Forman with an Order of Suspension, and issued a temporary license allowing her to drive for 45 days or until completion of an administrative hearing.[2]

---

**2.** Section 16–205.1(b)(3) provides, in part:
 "If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.10 or more at the time of testing, the police officer shall:
 (i) Confiscate the person's driver's license issued by this State;
 (ii) Acting on behalf of the Administration, personally serve an order of suspension on the person;
 (iii) Issue a temporary license to drive;
 (iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title;
 (v) Inform the person that [he or she has the right to a hearing];
 (vi) Advise the person of the administrative sanctions that shall be imposed in the event of failure to request a hearing, failure to attend a requested hearing, or upon an adverse finding by the hearing officer."

Officer Jacobs thereafter certified to the MVA on its form DR–15A that he had reasonable grounds to stop Forman, that she had refused the test, and that she had been "fully advised of the administrative sanctions" that would be imposed for her refusal. *See* § 16–205.1(b)(3)(vii).[3] Pursuant to § 16–205.1(f), Forman timely requested an administrative hearing from the MVA regarding the suspension of her driver's license. Prior to the hearing, she requested that the MVA, pursuant to its powers under § 12–108 of the Transportation Article, issue a subpoena to require Officer Jacobs to appear and testify at the hearing. Subpoena requests must contain "a proffer of the expected testimony and its relevance to the proceeding." Code of Maryland Regulations (COMAR) 11.11.03.07A(5). In her subpoena request, Forman proffered that Officer Jacobs would testify, in relevant part, as follows:

"That the officer did not have reasonable grounds to detain the licensee and further, did not fully advise the licensee of the administrative sanction for refusal to take the test or for test results in excess of 0.10.

In addition, this officer made the refusal involuntary and not a knowing and/or intelligent decision and induced the

---

3. Section 16–205.1(b)(3)(vii) provides that after a test refusal or failure, the police officer shall:

"Within 72 hours after the issuance of the order of suspension, send any confiscated driver's license, [a] copy of the suspension order, and a sworn statement to the Administration, that states:
1. The officer had reasonable grounds to believe that the person had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while intoxicated, while under the influence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;
2. The person refused to take a test when requested by the police officer or the person submitted to the test which indicated an alcohol concentration of 0.10 or more at the time of testing; and
3. The person was fully advised of the administrative sanctions that shall be imposed."

The MVA has developed the DR–15A form to facilitate compliance with this section.

licensee to refuse the test by offering to allow her to be released at the scene and then driven to a friend[']s home. . . .

This officer misadvised the licensee of the consequences of refusal, both in court and at the MVA hearing."

The MVA advised Forman that her request would be deferred until the administrative hearing, at which time the ALJ would decide whether to issue the subpoena.[4]

Forman's hearing was held on May 15, 1992 before an administrative law judge. The crux of Forman's argument at the hearing was that, although she read and signed the DR–15 Advice of Rights form, in subsequent conversation at the scene of the arrest Officer Jacobs negated the warnings contained in the form and also induced her to refuse the alcohol concentration test, thereby affecting her ability to make a knowing and voluntary decision about whether to take or refuse the test. She testified that, after failing the pocket Breathalyzer and field sobriety tests, she was handcuffed and placed in the police cruiser. She then testified as follows:

"[FORMAN'S ATTORNEY]: When you got back in the police cruiser, was there any conversation about whether you would take another Breathalyzer test?

MS. FORMAN: He said we could go to the station and take the test out there at the police station.

[FORMAN'S ATTORNEY]: Okay. And did he tell you what happened if you decided to take that test?

MS. FORMAN: He said that my husband would have to come pick me up at the police station.

[FORMAN'S ATTORNEY]: You had discussions with him about that?

MS. FORMAN: Yes, I told him I did not want my husband to come pick me up at the police station. I asked him if he could just take me to my friend's house. He says, no, he

---

4. Subpoena requests may be deferred until the hearing is held, at which time the ALJ "may take testimony and receive evidence to determine if the request may be granted pursuant to § C." Code of Maryland Regulations (COMAR) 11.11.03.07D.

couldn't do that, but then he would think about it. And I said, well, I can't, I don't want my husband to find out about this and I said I don't know what to do and then we started talking about refusing the test and I said, I just don't know what the right answer is. *I said if I go to the police station, I said I don't want my husband to pick me up. I said he's going to kill me.* My husband doesn't drink, you know, wake him up out of bed, you know, I just don't want that to happen. I don't want him to find out about this and he said that I could have all the papers sent to my employer and I just said, well, can you take me back to my friend's house and he said well, I'll think about it.

And then later on he said well, keep going back about whether or not to take the test or whether to refuse *and he said, well, if you want to take the test I'll take you to the police station. He said, if you want to refuse, I'll take you back to your friend's house.*

[FORMAN'S ATTORNEY]: Now, when you were talking to him about the test, did you ever, did he have a conversation with you about what would happen in terms of your license privileges if you refused the test?

MS. FORMAN: No. I asked him about that and I said if I go to the station, I said they may take it for 45 days, I said if I refuse it they may take it for 120. He said they may. He said I don't know what they're going to do. He said that he came and testified in one case; he said he didn't know if the guy got his license back or not. He said, what can you tell them, it's your first offense, that you were scared, you were confused, you just wanted to go back to your friend's house, what else can you say. That's what was going on.

[FORMAN'S ATTORNEY]: After all these, this discussion with the officer, did you, did you know at the time that you told him that you wanted to go back to your friend's house, that you didn't want to take the test, what was your thought as to what was going to happen here today in terms of certainty or probability of whether your license would be suspended or not?

MS. FORMAN: I thought, what I got out of it, that I would come here and I thought with people that I know that have had DWI's, I've known people that have got three of them and they are still driving on the road; whether or not they refused the test or took the test, I don't know, but I just thought I would come in here. I certainly didn't think that it was going to be a mandatory thing, that they were going to take my license away from me. I thought I had a good chance of getting my license back.

[FORMAN'S ATTORNEY]: If you had known that refusal to take the test would have necessarily certainly resulted in your license being suspended for 120 days, would you have taken the test?

MS. FORMAN: Yes, I would have gone to the station.

[FORMAN'S ATTORNEY]: Why?

MS. FORMAN: Because I can't lose my license for four months.

\* \* \* \* \* \*

[FORMAN'S ATTORNEY]: When you read this form [the DR–15], did you have any discussion with the officer about the meaning of the form?

MS. FORMAN: That's the one where it states that your license will be taken for 120 days. Yeah, there was one—that's when I was talking to him about that. That's when I couldn't make up my mind. I said I couldn't lose my license for four (4) months. I don't know if I should refuse the test or take the test. But I can't—and that's when he says, he said what can you tell them. He said, you were scared, you were confused. I had never been in a police car before. I had never done anything wrong. I just wanted to go back where I knew people. I had never been in a police station. I didn't know what was going to happen to me. *And he said they may give your license back. He said I don't know what they're going to do."* (Emphasis added).

The ALJ declined to issue a subpoena for Officer Jacobs. Instead, after hearing this testimony from Forman and further argument from her attorney, he concluded:

"After considering the evidence introduced and the testimony given ..., I find Licensee appeared for a hearing pursuant to proper notice. Represented by legal counsel. Maryland driving record is accurate. Licensee was lawfully arrested on 2/23/92 after being observed by police officer cross the double yellow line by one half of a motor vehicle. Upon contact, the police officer detected an odor of alcohol. Licensee failed three (3) field sobriety tests. Licensee read DR–15 [Advice of Rights form]. Licensee signed form. Licensee is a high school graduate, one semester college. Licensee refused to submit to chemical test. First refusal. I conclude Licensee is subject to the provisions of Section 16–205.1 and I'm suspending your license for a period of 120 days."

Forman noted a timely appeal to the Circuit Court for Howard County, which affirmed the decision of the administrative law judge. Forman filed a petition for writ of certiorari with this Court seeking review under Md.Code (1974, 1989 Repl. Vol.), Courts and Judicial Proceedings Art., § 12–305, and we granted her petition.

## II.

Underlying the result we reach today is the importance this Court has attached to a detained driver's receipt of the required advice of rights. We have previously indicated that a detaining officer's negation of previously and properly given advice of rights can violate a licensee's due process rights. *Hare v. Motor Vehicle Admin.*, 326 Md. 296, 306, 604 A.2d 914, 919 (1992).

In *Hare* and its companion case of *Motor Vehicle Admin. v. Chamberlain*, 326 Md. 306, 604 A.2d 919 (1992), we considered whether a detaining officer must advise drivers of the MVA's ability to modify a suspension or issue a restrictive license for drivers who take an alcohol concentration test and fail, but meet certain conditions. The relevant statute was § 16–205.1(m), which provides:

"*Modification of suspension.*—(1) The Administration may modify a suspension under this section or issue a restrictive license if:

(i) The licensee did not refuse to take a test;

(ii) The licensee has not had a license suspended under this section during the past 5 years;

(iii) The licensee has not been convicted under § 21–902 of this article during the past 5 years; and

(iv) 1. The licensee is required to drive a motor vehicle in the course of employment;

2. The licensee is required for the purpose of attending an alcoholic prevention or treatment program; or

3. It finds that the licensee has no alternative means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired.

(2) If the licensee refused to take a test, the Administration may not modify a suspension under this section or issue a restrictive license."

In *Hare* and *Chamberlain,* the licensees both argued that the MVA's § 16–205.1(m) ability to exercise discretion *only* when a driver takes a test and fails is an incentive to take the test significant enough that the detaining officers should have informed them of it.[5] Specifically, the licensee in *Chamberlain* contended that, in addition to being told of the longer suspension resulting from refusal versus failure (120 days for a first offense, versus 45 days), the detained driver "must be told of at least one other reward or incentive which flows from failing the test, but not from refusing it, *i.e.,* that a driver who fails the test may be eligible to have his suspension modified or for a restrictive license." *Chamberlain,* 326 Md. at 314, 604

---

5. Section 16–205.1 was amended in 1989 to give the MVA such discretion only when a driver takes the test and fails. *See* Chapter 284 of the Acts of 1989. Prior law permitted the MVA to modify a suspension or issue a restricted license when a driver refused to take the test. *See* Md.Code (1977, 1987 Repl.Vol.), Transportation Art., § 16–205.1(f)(5).

A.2d at 922. The licensee in *Hare* made the same argument, and further contended that he "was denied due process when he was not so advised." *Hare,* 326 Md. at 300, 604 A.2d at 915. He asserted that "it is fundamentally unfair, hence, a denial of due process, to suspend a driver's license without first advising the driver 'fully' of the applicable administrative sanctions." *Id.* at 301, 604 A.2d at 916.

In each case, the Court rejected the licensee's claim, holding that the detaining officer need not inform the driver of the possibility of suspension, modification, or the issuance of a restricted license. In *Chamberlain,* 326 Md. at 323, 604 A.2d at 927, we concluded that the statute did not require that any such advice be given. In *Hare,* we acknowledged that " '[t]he continued possession of a driver's license ... may become essential to earning a livelihood; as such, it is an entitlement which cannot be taken without the due process mandated by the Fourteenth Amendment.' " *Hare,* 326 Md. at 301, 604 A.2d at 916 (quoting *Sites v. State,* 300 Md. 702, 717, 481 A.2d 192, 200 (1984), citing *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) and *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)). Nonetheless, we decided that due process does not require a detaining officer to provide any advice other than that which the statute requires. "A driver need not be told of every conceivable incentive for taking a chemical test for alcohol or, for that matter, even one additional incentive not required by the statute." *Hare,* 326 Md. at 304, 604 A.2d at 918. "Having provided the advice mandated by the statute, the police officer was not required to anticipate, or guess at, what incentive would have caused the driver to take the chemical test.... Due process does not require the officer to weigh the relative merits, for encouragement value, of particular consequences flowing from the decision whether to take or refuse a chemical test." *Id.* at 306, 604 A.2d at 918–19.[6]

---

6. Effective January 1, 1994, § 16–205.1(f)(8)(i)(3) will provide the additional prerequisite to suspension that "[t]he police officer requested a test after the person was fully advised of the administrative sanctions

In *Hare,* although we determined that due process does not require the driver to be informed of more than the statute requires, we also cautioned that due process demands "that the State not mislead the defendant or construct road blocks, thus unduly burdening [the defendant's] decision-making." *Id.* at 304, 604 A.2d at 918. Writing for the Court, Judge Bell observed that "had [the officer] undertaken to provide additional information and it turned out to be misleading or inaccurate, that, in itself, may have been a denial of due process." *Id.* at 306, 604 A.2d at 919.

Courts from other jurisdictions have explicitly held what *Hare* clearly implied—that an officer's negation of previously and properly given advice of rights may necessitate reversal of a license suspension. In *Gargano v. New York State Dep't of Motor Vehicles,* 118 A.D.2d 859, 500 N.Y.S.2d 346, *appeal denied,* 68 N.Y.2d 606, 506 N.Y.S.2d 1030, 498 N.E.2d 150 (1986), the officer initially administered the statutory warning by reading from a card correctly indicating that a refusal to submit to the test would " 'result in the immediate suspension and subsequent revocation' " of the driver's license. However, it was later conceded that

"after this initial statement by the officer, the officer thereafter, in explaining the meaning of the warning to the petitioner, incorrectly stated as follows: 'I told him that his license would be suspended for three months and that he would have to appear at a DMV hearing in fifteen days.' "

*Id.,* 118 A.D.2d 859, 500 N.Y.S.2d at 346. The court concluded that "[t]his later 'explanation' of the warning was clearly incorrect, and under the circumstances, violated the requirement that the petitioner be warned 'in clear or unequivocal language' of the serious and immediate consequences of a refusal to submit to a chemical test." *Id.,* 118 A.D.2d 859, 500 N.Y.S.2d at 346–47. The court reversed the revocation order.

---

that shall be imposed INCLUDING THE FACT THAT A PERSON WHO REFUSES TO TAKE THE TEST IS INELIGIBLE FOR MODIFICATION OF A SUSPENSION OR ISSUANCE OF A RESTRICTIVE LICENSE...." Ch. 407 of the Acts of 1993 (emphasis in original).

In *Commonwealth Dep't of Transp. v. Osborne*, 135 Pa. Commw. 297, 580 A.2d 914 (1990), the officer correctly informed the driver that his license would be suspended upon refusal to submit to an alcohol concentration test. It was subsequently established that the officer also told the driver, incorrectly, that he was aware of a "special work permit" which would allow the driver to drive to and from work during the suspension. *Id.*, 135 Pa.Commw. 297, 580 A.2d at 915–16. The court affirmed a lower court's reversal of the suspension, rejecting the State's argument that, if a warning is properly given to a driver, then any subsequent misinformation given to the driver should be harmless. The court stated:

"This is contrary to the well-established principle that an appeal of a suspension imposed pursuant to this section will be sustained if the driver proves by competent evidence that he was unable to make a knowing and conscious refusal. In the present case, the trial court determined that the arresting officer's statement about the availability of a special license prevented [the driver] from making a knowing and conscious refusal, and we agree." (Citation omitted).

*Id.*, 135 Pa.Commw. 297, 580 A.2d at 916. Even where there is no requirement that an officer give any explanation of the accused's right to refuse or of the consequences of that refusal, it has been observed that "[t]he officer administering the test may not mislead the accused...." *State v. Compton*, 233 Kan. 690, 664 P.2d 1370, 1375 (1983).

 The compelling need for clarity in communicating the consequences of refusal to take an alcohol concentration test is also evident in several cases addressing the interaction of the *Miranda* warnings with implied consent statutes. Generally, a motorist arrested for driving while intoxicated is not entitled to *Miranda* warnings prior to being given a Breathalyzer test since breath taken from the motorist is non-testimonial, physical evidence. *See McAvoy v. State*, 314 Md. 509, 551 A.2d 875 (1989). When, however, an officer chooses to give *Miranda* warnings to a suspected drunk driver, confusion conceivably could result because *Miranda*'s absolute right to an attorney conflicts with the more limited right in the implied

consent statute.[7] Therefore, some states have even held that "if a Miranda warning is given in connection with an explanation of the implied consent law, the police officers must explicitly inform the suspect that the Miranda rights are not applicable to the decision of whether or not to take the test." *Wright v. State,* 288 Ark. 209, 703 S.W.2d 850, 851 (1986). Similarly, the Supreme Court of Hawaii held that, while a licensee is not entitled to *Miranda* warnings prior to being required to submit to the test, "[w]here the warnings, however, are in fact given to the motorist, care must be taken to ensure that he is not thereby misled as to his rights, or the absence thereof, under the implied consent statute." *State v. Severino,* 56 Haw. 378, 537 P.2d 1187, 1189 (1975). Although we neither express approval or disapproval of these specific holdings, they effectively illustrate the importance of ensuring that the motorist gets clear and correct advice.

In Maryland, a prerequisite to the MVA's suspension of a driver's license after a hearing is a finding that the police officer "requested a test after the person was *fully advised* of the administrative sanctions that shall be imposed...." § 16–205.1(f)(8)(i)(3) (emphasis added). "Fully advised" means not only advised *initially,* but the detaining officer must also take care not to *subsequently* confuse or mislead the driver as to his or her rights under the statute. Further, the officer certainly must not in any way induce the driver into refusing the test, a result running counter to the statute's purpose of encouraging drivers to submit to alcohol concentration tests. *See* § 16–205.1(b)(1)(i) & (ii) (providing substantially longer and non-discretionary suspension for test refusal versus test failure, to encourage drivers to take the test).

---

7. Maryland has a limited due process right of a suspected drunk driver to, upon request, consult with counsel before submitting to a chemical sobriety test, "as long as such attempted communication will not substantially interfere with the timely and efficacious administration of the testing process." *Sites v. State,* 300 Md. 702, 717–18, 481 A.2d 192, 200 (1984).

Considering that the " 'continued possession of a driver's license ... may become essential to earning a livelihood,' " *Hare,* 326 Md. at 301, 604 A.2d at 916 (quoting *Sites,* 300 Md. at 717, 481 A.2d at 200), the 120–day mandatory suspension for refusal can easily be a serious blow. In the instant case, for example, Forman testified as follows:

"[FORMAN'S ATTORNEY]: If you had known that refusal to take the test would have necessarily certainly resulted in your license being suspended for 120 days, would you have taken the test?

MS. FORMAN: Yes, I would have gone to the station.

[FORMAN'S ATTORNEY]: Why?

MS. FORMAN: Because I can't lose my license for four months."

In sum, a person detained for drunk driving must be capable of making a knowing and voluntary decision to refuse the alcohol concentration test. The MVA has developed an Advice of Rights form, the DR–15, which accurately and adequately conveys to the driver the rights granted by the statute. Officers should be very cautious in providing information beyond that contained in the Advice of Rights form.[8] When

---

8. Effective January 1, 1994, police officers will be required to specifically advise suspected drunk drivers that the suspension for refusal to take an alcohol concentration test is mandatory. Chapter 407 of the Acts of 1993 (amending § 16–205.1(b)(2)) provides that an officer shall:

"(i) Detain the person;

(ii) Request that the person permit a test to be taken; and

(iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test, INCLUDING INELIGIBILITY FOR MODIFICATION OF A SUSPENSION OR ISSUANCE OF A RESTRICTIVE LICENSE, and for test results indicating an alcohol concentration of 0.10 or more at the time of testing." (Emphasis in original).

The amended statute requires that the officer's sworn statement to the MVA state that "[t]he person was fully advised of the administrative sanctions that shall be imposed, INCLUDING THE FACT THAT A PERSON WHO REFUSES TO TAKE THE TEST IS INELIGIBLE FOR MODIFICATION OF A SUSPENSION OR ISSUANCE OF A RESTRICTIVE LICENSE." Ch. 407 of the Acts of 1993 (amending § 16–205.1(b)(3)(vii)(3)) (emphasis in original). It also makes whether or not the person was so advised an issue at an administrative hearing and a

the issue is generated, the ALJ has the obligation of determining at the hearing whether the detaining officer has misstated the consequences of refusal, or whether the officer has clearly made the refusal option more attractive. Of course, whether the officer in a particular case has prevented a detained driver from making a knowing and voluntary decision to refuse the test is a matter that must be decided by the administrative law judge in view of the facts of the particular case. Whatever the result reached in a particular case, however, what is critical for our purposes is the underlying principle that whether and to what extent a particular officer negated previously given warnings or induced a driver to refuse a test is an issue which, once generated by the licensee, should be adequately addressed and resolved by the ALJ.

### III.

In the instant case, the difficulty is that although Forman's proffer and her testimony clearly raised the advice of rights issue, the ALJ either never decided the issue or, if he did, never explained his decision.

Under the Maryland Administrative Procedure Act, Md. Code (1984, 1993 Repl.Vol.), State Government Art., § 10–215(g)(3), a reviewing court may

"reverse or modify the decision [of the agency] if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

---

condition for suspension of the license. *See id.* (amending § 16–205.1(f)(7)(i)(3) & (8)(i)(3)).

Presumably, the MVA's DR–15 form will be amended accordingly.

(vi) is arbitrary or capricious."

In order to apply the appropriate standard of review, however, the reviewing court first must know how and why the agency reached its decision. It must know what it is reviewing. In the instant case, the record does not indicate what the ALJ found or how he reached his decision. After hearing testimony from Forman, the ALJ merely recited brief findings of fact and stated: "Licensee read DR–15 [Advice of Rights form]. Licensee signed form." The ALJ neglected to address a very specific, clearly stated, material issue raised by Forman—whether the officer negated the DR–15 Advice of Rights or otherwise induced her to refuse the test.

An administrative law judge is obligated by § 12–208(b) of the Transportation Article as follows:

"*Manner and notice of adverse decision.*—If a decision or order of the Administration is adverse to any party to the hearing, the decision or order:

(1) Shall be made in writing on the record and accompanied by findings of fact and conclusions of law...."

Similarly, § 10–214(b) of the Administrative Procedure Act provides:

"*Contents.*—(1) A final decision in a contested case shall contain separate statements of:

(i) the findings of fact; and

(ii) the conclusions of law.

(2) If the findings of fact are stated in statutory language, the final decision shall state concisely and explicitly the facts that support the findings."

Md.Code (1984, 1993 Repl.Vol.), State Government Art., § 10–214(b). The purpose and effect of these sections is to provide the parties and, ultimately, a reviewing court, with the ability to understand the basis for the ALJ's decision. And, as Judge Adkins said with respect to § 10–214(b) in *Motor Vehicle Admin. v. Mohler,* 318 Md. 219, 230, 567 A.2d 929, 935 (1990),

"[i]f hearing examiners followed this directive scrupulously, it would be helpful to us, to the circuit courts, and to the

hearing examiners themselves, for a careful statement of facts and conclusions would force the examiner to focus on the evidence presented and its sufficiency to support a particular conclusion."

Without findings of fact on all material issues, and without a clear statement of the rationale behind the ALJ's action, a reviewing court cannot properly perform its function. *See Harford. County v. Preston,* 322 Md. 493, 505, 588 A.2d 772, 778 (1991) ("This requirement is in recognition of the fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision and to permit meaningful judicial review of those findings."); *Board of County Comm'rs v. Ziegler,* 244 Md. 224, 229, 223 A.2d 255, 257–58 (1966) (remanding case to zoning authority to provide factual basis and reasons for its action).

In *State Comm'n on Human Relations v. Malakoff,* 273 Md. 214, 229, 329 A.2d 8, 17 (1974), Judge Digges, writing for the Court, said that

"it is appropriate to point out, as we have in previous opinions, not only the importance but the necessity that administrative agencies resolve all significant conflicts in the evidence and then chronicle, in the record, full, complete and detailed findings of fact and conclusions of law."

The ALJ in the instant case failed to "resolve all significant conflicts in the evidence," or to make "full, complete and detailed findings of fact and conclusions of law." At a minimum, one must be able to discern from the record the facts found, the law applied, and the relationship between the two. " 'We must know what a decision means before the duty becomes ours to say whether it is right or wrong.' " *United Steelworkers v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62, 69 (1984) (quoting *United States v. Chicago, M., St. P. & P.R. Co.,* 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023, 1032 (1935)). In the instant case, while the ALJ recognized the undisputed fact that Forman had read the Advice of Rights form, he neglected to address the critical issues which

Forman had raised. Because he failed to resolve important factual issues and to make clear "what [his] decision means," *see id.*, we must reverse the judgment of the circuit court affirming the ALJ's decision and remand for further proceedings.

## IV.

 As for Forman's claim that the ALJ improperly denied her request to subpoena the detaining officer, the ultimate conclusion about whether the ALJ was correct depends upon why the ALJ rejected the request. As we have noted, we do not know precisely why the ALJ did so. We can say that when faced with a licensee's proffer and subpoena request, an ALJ has three distinct choices: (1) accept the proffer's contents as true, and indicate this acceptance; (2) reach no conclusion regarding the truth of the proffer (essentially suspending judgment), and issue the subpoena; or (3) reject the proffer and subpoena request entirely, and provide a valid explanation of the rejection. This third option enables the ALJ to dispose of frivolous or otherwise improper subpoena requests. We emphasize that the ALJ may only avoid issuing the subpoena when he or she explicitly accepts the proffer or rejects the proffer and provides a basis for this rejection.

 As for the ALJ's decision to accept or reject a subpoena request, the legislature has given the MVA subpoena power, providing that "[i]n any matter subject to its jurisdiction, the Administration may subpoena any person or documents and take the testimony of any person. . . ." § 12–108(a). Certainly, not every request for a subpoena must be granted; this decision is governed by the general evidentiary standards set out in the Administrative Procedure Act. *See* § 12–207(a) (providing that each MVA hearing "shall be conducted in accordance with the rules of evidence in §§ 10–208 and 10–209 of the State Government Article [the Administrative Procedure Act]"). Section 10–208 of the Administrative Procedure Act provides:

"(c) *Exclusions.*—The agency may exclude evidence that is:

(1) incompetent;

(2) irrelevant;

(3) immaterial; or

(4) unduly repetitious.

\*　\*　\*　\*　\*　\*

(e) *Scope of evidence.*—On a genuine issue in a contested case, each party is entitled to:

(1) call witnesses;

(2) offer evidence, including rebuttal evidence;

(3) cross-examine any witness that another party or the agency calls; and

(4) present summation and argument."

Md.Code (1984, 1993 Repl.Vol.), State Government Art., § 10–208. The MVA's own regulation, COMAR 11.11.03.07, specifically addresses refusal of subpoena requests. Following the § 10–208 standard, it provides:

".07 **Request for Subpoenas.**

\*　\*　\*　\*　\*　\*

C. A request may be refused if the testimony or evidence to be offered:

(1) Is immaterial, irrelevant, or unduly repetitious; or

(2) Does not pertain to a genuine issue in the contested case."

Should the ALJ decide not to accept a licensee's proffered testimony as true, then failure to grant licensee's subpoena request may be an abuse of discretion when the proffered testimony (1) does not fall within the categories of excludable evidence found in COMAR and the Code and (2) the ALJ provides no valid reasons why the proffer was rejected. In Forman's case, the evidence proffered met both the statutory and regulatory standards and there was no other apparent reason to reject the proffer. The proffered evidence directly "pertain[ed] to a genuine issue in the contested case," COMAR 11.11.03.07C(2), namely, whether Forman was properly

and fully advised of the administrative sanctions to be imposed for refusing the test. Further, our earlier discussion should make clear that evidence pertaining to negation of the advice of rights or inducement to refuse the alcohol concentration test is neither incompetent, irrelevant, immaterial, nor unduly repetitious. *See* Md.Code (1984, 1993 Repl.Vol.), State Government Art., § 10–208(c) and COMAR 11.11.03.07C(2). In fact, the officer's advice to the licensee is specifically established, by statute, as a necessary issue to be decided at the hearing. As § 16–205.1(f)(7)(i) states: "At a hearing . . . the only issues shall be . . . (3) [w]hether the police officer requested a test after the person was *fully advised* of the administrative sanctions that shall be imposed. . . ." (Emphasis added). Thus, if the ALJ did not accept the proffer as to the officer's advice of rights, he should have issued the subpoena to require the detaining officer to testify at the hearing.

## V.

In the instant case, on remand, the ALJ has two of the three options we discussed earlier. The third option, rejecting the subpoena request and proffer without either assuming its truth or subpoenaing the officer, is not viable in this case in view of the need to resolve the advice of rights issue which was generated by the proffered testimony of the officer.

Of the two remaining options, the ALJ's first is to accept Forman's testimony and proffer as true. If so, the judge should clearly state his acceptance of the proffer on the record and need not then subpoena the officer merely to reiterate the testimony that was proffered. However, upon accepting the truth of the testimony and proffer, the ALJ must determine whether the proffered statement of the officer negated the Advice of Rights form or induced Forman to refuse the test. The ALJ's second option is available if the judge has doubts about the accuracy of Forman's proffer regarding the officer's testimony. If that is the case, the importance of the advice of rights issue demands that Officer Jacobs be subpoenaed to appear at the hearing so that Forman may present her evidence and the ALJ may make the necessary findings.

JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE DECISION OF THE MOTOR VEHICLE ADMINISTRATION AND REMAND THE CASE TO THE ADMINISTRATIVE LAW JUDGE FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT, THE MOTOR VEHICLE ADMINISTRATION.