*Motor Vehicle Administration v. Brian Barrett*, No. 22, September Term, 2019

**ADMINISTRATIVE LAW — DUE PROCESS — RIGHTS AFFORDED TO DETAINEES —** The Court of Appeals held that where a motorist refuses a blood alcohol concentration test pursuant to MD. CODE, ANN., TRANS. § 16-205.1(b) (Lexis Nexis Supp. 2018), if an administrative law judge finds that the motorist was fully advised of his or her rights despite being distracted while the Advice of Rights form was being read, that determination will not be disturbed if it is supported by substantial evidence.

Circuit Court for Anne Arundel County
Case No. C-02-CV-18-002886
Argued: October 31, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 22

September Term, 2019

_____

MOTOR VEHICLE ADMINISTRATION

v.

BRIAN J. BARRETT

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Booth
Harrell, Glenn T., Jr.,
   (Senior Judge, Specially Assigned)
Greene, Clayton, Jr.,
   (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: January 24, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The question before this Court involves application of Maryland's "implied consent" statute, MD. CODE, ANN., TRANS. ("TR") § 16-205.1(b) (Lexis Nexis Supp. 2018). We must decide the proper outcome under the statute when a motorist refuses to take a blood alcohol concentration test after having been advised via the Motor Vehicle Administration ("MVA") DR-15 "Advice of Rights" form and later claims a failure of the law enforcement officer to "fully advise" the motorist of his rights.

Brian J. Barrett, Respondent, had his driver's license suspended because he refused to take a blood alcohol concentration test after being detained for suspicion of driving while under the influence of alcohol. An administrative law judge ("ALJ") upheld the MVA's Order of Suspension after finding that Respondent had been advised in conformity with MVA form DR-15. The ALJ modified the suspension to allow Respondent to participate in the Ignition Interlock Program for one year. Respondent's refusal to take the test nevertheless resulted in a one-year disqualification of his Maryland Commercial Driver's License ("CDL"). On judicial review, the Circuit Court for Anne Arundel County reversed the suspension after finding that Respondent was not fully advised of his rights because he was distracted while the detaining police officer explained the administrative sanctions for refusing to take a blood alcohol concentration test.

Petitioner, the MVA, appeals that decision. For reasons we explain, we hold that Respondent was fully advised of his rights per TR § 16-205.1(b)(1) despite two police officers speaking to him simultaneously—one reading the DR-15 and the other asking questions. We therefore affirm the determination by the ALJ that the police officers' simultaneous speaking did not prevent Respondent from understanding his rights and the

sanctions for refusing to submit to a blood alcohol concentration test, as outlined in the DR-15.

## The Facts

### *The Traffic Stop*

Respondent is a Maryland resident and possesses a CDL.  On April 22, 2018, Officer Thornton observed Respondent commit multiple traffic violations, including driving above the posted speed limit and making unsafe lane changes.  Officer Thornton executed a traffic stop, approached Respondent, and detected a strong odor of alcohol; he also noticed that Respondent's eyes were bloodshot and he exhibited slurred speech.  Officer Thornton ordered Respondent out of the vehicle and conducted standardized field sobriety tests. Because Respondent performed poorly on the tests and showed other signs of impairment, Officer Thornton handcuffed Respondent and placed him in the front passenger seat of a patrol vehicle.

While Officer Thornton and Respondent were roadside in the patrol vehicle, Officer Thornton read Respondent the DR-15.  Respondent was given a copy of the form so he could follow along as it was read to him.  As the DR-15 advisement of rights was being read, another police officer, Officer Claytor, approached Respondent.  Through the open window on the passenger side of the patrol vehicle, Officer Claytor asked Respondent several questions, such as whether he "would blow," i.e., submit to a blood alcohol concentration test.  Officer Claytor asked those questions while Officer Thornton was reading the DR-15 aloud.  Once Officer Thornton finished reading the form, he and Officer

2

Claytor asked Respondent multiple times whether Respondent would submit to the test. After asking a seventh time without a response from Respondent, Officer Thornton marked on the DR-15 that Respondent refused to take the test. Respondent was transported to the police station for processing.

At the station, Officer Thornton and Respondent signed the DR-15 form. The acknowledgment on the DR-15 states, "**I, the undersigned driver,** acknowledge that I have been read or I have read the above stated Advice of Rights as certified by the police officer." Below the acknowledgment, the form asks, "**Having been so advised, do you now agree to submit to a test?**" Officer Thornton checked the box below that states, "**No – Alcohol concentration test refused**[,]" and Respondent's signature appears underneath. As required by TR § 16-205.1, Respondent's driver's license was subject to a 270-day suspension, and his refusal to take the test prompted a one-year disqualification of his CDL.

*Administrative Proceedings*

Respondent requested an administrative hearing, which took place on July 12, 2018.[1] At the hearing, Respondent averred that he was not fully advised of his rights due to the roadside noise and Officer Claytor's questioning him while the DR-15 was being read. The hearing was continued, and the ALJ subpoenaed Officer Thornton. When the hearing resumed on September 25, 2018, Officer Thornton and Respondent testified about the incident.

---

[1] Under TR § 16-205.1(f)(1)(ii), a motorist whose driver's license was suspended for a test refusal may request a hearing before an ALJ.

Officer Thornton detailed the events surrounding Respondent's arrest. He testified that after Respondent was handcuffed and seated in the patrol vehicle, Officer Thornton read the DR-15 aloud to Respondent. While reading, Officer Claytor asked Respondent questions. Respondent testified that he could not hear Officer Thornton over Officer Claytor and asked Officer Claytor to stop speaking. He further testified, "I could hear him reading. I only recall a few parts of [the DR-15], very small parts and I could not understand what [Officer Thornton] was trying to tell me." After Officer Thornton was done reading, the officers repeatedly asked Respondent whether he would take the test, and Respondent asked several times, "what should I do?" After asking a seventh time whether Respondent would take the test, Officer Thornton interpreted Respondent's unresponsive utterances as a refusal.

Based on that testimony, the ALJ concluded that Respondent violated TR § 16-205.1. The ALJ explained that there was sufficient evidence to determine that Respondent was apprised of the administrative sanctions that would be imposed if he refused to take the test. In coming to that conclusion, the ALJ made a credibility determination, stating "although the officer may have been talking, I just don't find credible that he could talk so much that you couldn't understand the form that was there in front of you." The ALJ specifically noted that Respondent had a copy of the DR-15 while Officer Thornton read it aloud, he asked Officer Thornton several times whether or not he should take the test, and he later signed the form at the station before his release. Based on those facts, the ALJ

ordered that Respondent's CDL remain disqualified for a year,[2] but in lieu of upholding the 270-day driver's license suspension the ALJ allowed Respondent to participate in the Ignition Interlock System Program. TR § 16-404.1(f)(1)(i) (permitting an ALJ to "[m]odify a suspension and issue a restricted license" to a motorist who qualifies as a program participant).

### *The Circuit Court Hearing*

Respondent appealed the ALJ's decision to the Circuit Court for Anne Arundel County pursuant to TR § 12-209(a),[3] and a hearing was held on March 18, 2019. At the hearing, Respondent argued that he was not fully advised of his rights as required by TR § 16-205.1. Respondent argued that he was distracted by Officer Claytor's questioning and therefore Respondent could not understand the DR-15 as it was read to him by Officer Thornton.

The MVA countered that the Advice of Rights need only be made available to the driver; police officers are not obligated to ensure that motorists understand those rights. The ALJ made a factual finding that the DR-15 was read aloud to Respondent and he was

---

[2] Under TR § 16-205.1(b)(1)(iii) and § 16-812(a)(3), the MVA disqualifies a CDL for one year if the motorist holding the CDL refuses to take a blood alcohol concentration test.

[3] TR § 12-209(a) states:

(1) Any aggrieved party to a hearing may appeal from a decision or order of the Administration in accordance with this subsection.
(2) If the matter concerns the license of an individual to drive and the individual is a resident of this State, the aggrieved party may appeal to the circuit court for the county in which the individual resides.

given a copy to read himself. The MVA further argued that a police officer cannot fully ensure that a presumably intoxicated motorist understands the DR-15 form. Based on the facts presented, the ALJ did not find it credible that Officer Claytor's questioning inhibited Respondent from understanding those rights.

On judicial review, the circuit court understood the issue presented in the instant case to be a mixed question of law and fact. The circuit court found in favor of Respondent and reversed the decision of the ALJ. The circuit court was concerned about the limitations on a "compromised human mind . . . to be read and understand something" when another police officer is simultaneously asking questions. The circuit court reasoned that Respondent could not be expected to understand and decide whether to take the test while being questioned by an officer; therefore, the ALJ erroneously decided that Respondent was fully advised of his rights. The credibility determination of the ALJ was not mentioned in the circuit court's ruling. This appeal followed.

As stated at the outset, we reverse the circuit court and affirm the determination of the ALJ.

## STANDARD OF REVIEW

This Court reviews "an administrative agency's decision under the same statutory standards as the Circuit Court." *Gigeous v. E. Corr. Inst.*, 363 Md. 481, 495 (2001). It is not this Court's role to "substitute its judgment for the expertise of those persons who constitute the administrative agency[.]" *United Parcel Serv., Inc. v. People's Counsel for Balt. Cty.*, 336 Md. 569, 576–77 (1994). "Therefore, ordinarily the court reviewing a final

6

decision of an administrative agency shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Gigeous*, 363 Md. at 496 (internal quotations omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 497 (internal quotations omitted).

## DISCUSSION

The MVA argues that the circuit court substituted its judgment for that of the ALJ and misconstrued the law when it concluded that Respondent's inattention excused his test refusal. Respondent counters that (1) permitting officers to distract motorists while they are being read the DR-15 violates due process, and (2) his statutory right to be fully advised of the sanctions for a test refusal was frustrated by Officer Claytor's questioning. We explain below why the MVA has the better part of the argument.

### *Due Process is Satisfied When the DR-15 is Read to or by the Motorist.*

Any person who is detained under suspicion of driving or attempting to drive in the state while under the influence of alcohol, drugs, or both has given implied consent to take a blood alcohol concentration test, per § 16-205.1(a)(2) of the Transportation Article. Subsection 16-205.1(a)(2) provides that "[a]ny person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented . . . to take a [chemical breath] test [to determine blood alcohol concentration] if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol[.]" The purpose of TR § 16-205.1

7

"is not to provide procedural protections to drivers who are suspected to be impaired by alcohol, drugs, or both; instead, TR § 16-205.1's purpose is to protect the public by deterring drunk and/or drugged driving." *Motor Vehicle Admin. v. Seenath*, 448 Md. 145, 192 (2016) (internal citations and quotations omitted).

As a prerequisite to the MVA's suspension of a driver's license for refusing to submit to a blood alcohol concentration test, a police officer must advise the driver of the administrative sanctions attendant to that refusal. TR § 16-205.1(b)(2)(iv). After a test refusal, a police officer must also inform the driver that he or she has several rights available, such as the right to request a hearing. TR § 16-205.1(b)(3). The DR-15 is a standard form created by the MVA that outlines the sanctions for test refusal[4] and it contains all the advice officers are required to provide to detained motorists. *See Owusu v. Motor Vehicle Admin.*, 461 Md. 687, 691 (2018).

We have repeatedly held that due process is satisfied when the motorist reads or is read the DR-15 because the DR-15 "accurately and adequately conveys to the driver the rights granted by the statute" and "the consequences of a test refusal." *Motor Vehicle Admin. v. Delawter*, 403 Md. 243, 262 (2008) (citing *Forman v. Motor Vehicle Admin.*,

---

[4] The DR-15 includes a provision regarding test refusals by CDL holders:

**If you hold a commercial driver's license (CDL)** and were driving a non-commercial motor vehicle when you were stopped, and you refuse to submit to a test, your CDL or privilege shall be disqualified for 1 year for a 1st offense or for life if your CDL or privilege has been previously disqualified for at least 1 year under Maryland Transportation Article § 16-812(a) or (b), a federal law, or any other state's law.

8

332 Md. 201, 218 (1993); *Motor Vehicle Admin. v. Atterbeary,* 368 Md. 480, 496 (2002)). "[T]he DR-15 adequately capture[s] the full advisement of administrative sanctions because the language in the form is unambiguous, with no prejudice or roadblocks to inhibit a driver's decision-making process." *Owusu*, 461 Md. at 706 (citing *Seenath*, 448 Md. at 180).

Based on that precedent, Respondent's due process argument is without merit. As the ALJ found, Respondent possessed a copy of the DR-15 as Officer Thornton read it to him, and Officer Claytor's simultaneous questioning did not inhibit Respondent from understanding his rights and the sanctions for refusing the test.

***Whether There was Substantial Evidence to Support the ALJ's Conclusion that Respondent was Fully Advised of his Rights.***

While reading the DR-15 aloud or giving a copy of it to the motorist to read may fully advise the motorist of the sanctions for a test refusal, this Court has held that a motorist is not fully advised if the police officer confuses or misleads the motorist about the sanctions. *See Hare v. Motor Vehicle Admin.*, 326 Md. 296, 304 (1992) (cautioning that police officers may not "mislead the defendant or construct road blocks, thus unduly burdening that decision-making"), *superseded by statute on other grounds*, Chapter 407 of the Acts of 1993. In *Forman v. Motor Vehicle Administration*, this Court addressed whether a motorist was fully advised of her rights despite the arresting officer encouraging the motorist to refuse a blood alcohol concentration test and inaccurately explaining the sanctions for the refusal. 332 Md. at 206. In that case, the officer led the motorist to believe that if she refused the test, the MVA would be able to modify the suspension of her license.

9

*Id.* at 210.  Additionally, the officer encouraged the motorist to refuse the test by promising to take her to a friend's house rather than to the police station so that her husband would not find out about her arrest.  *Id.* at 209–11.

We held in *Forman* that a police officer must provide a detained motorist with an opportunity to make a knowing and voluntary decision to refuse a blood alcohol concentration test.  *Id.* at 218–19.  A detained motorist is deprived of the opportunity to make a knowing and voluntary decision regarding whether to take the test if the motorist is not fully advised of the sanctions for a refusal.  *Id.* at 216–17.  In reaching that conclusion, we stated:

> "Fully advised" means not only advised *initially*, but the detaining officer must also take care not to *subsequently* confuse or mislead the driver as to his or her rights under the statute.  Further, the officer certainly must not in any way induce the driver into refusing the test, a result running counter to the statute's purpose of encouraging drivers to submit to alcohol concentration tests.

*Id.* at 217 (emphasis in original).

Critical to the case at bar, we went on to explain that whether an officer "has prevented a detained driver from making a knowing and voluntary decision to refuse the test is a matter that must be decided by the [ALJ] in view of the facts of the particular case." *Id.* at 219.

Contrary to Respondent's assertions, Officer Claytor's questions did not frustrate Respondent's understanding of his rights.  The ALJ found substantial evidence that Respondent was fully advised of his rights—Respondent was given a copy of the DR-15, had it read aloud by Officer Thornton, and he later signed it.  Substantial evidence is present

10

if "a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 512 (1978) (internal quotations omitted). We agree with the ALJ that there was substantial evidence that Respondent was fully advised of his rights.

Although Respondent testified that he could not hear and understand Officer Thornton, the ALJ did not find credible Respondent's assertion that he was not properly advised because of Officer Claytor's questioning. "[T]he resolution of conflicting evidence and inconsistent inferences involves making credibility determinations." *Motor Vehicle Admin. v. Karwacki*, 340 Md. 271, 284 (1995). We have stated "that, in an administrative proceeding, credibility findings of the agency representative who sees and hears witnesses are entitled to great deference on further agency review and should not be reversed absent an adequate explanation of the grounds for the reviewing body's disagreement with those findings." *Id.*

The circuit court misapplied established standards of proof to overcome a prima facie case established by the police officer's sworn statement. The circuit court improperly substituted its judgment for that of the ALJ by determining that Respondent incur no sanctions for his violation of the implied-consent statute. Simply put, Respondent was appropriately asked to take a test for blood alcohol concentration; he refused. The ALJ credited the facts as asserted by the MVA, and we have no cause to disturb that credibility determination. The ALJ imposed the required consequence—a 270-day driver's license suspension, CDL disqualification, and the opportunity for modification to allow

11

Respondent to participate in the Ignition Interlock Program.  It follows that we reverse the judgment of the circuit court and remand the matter to the MVA for action consistent with our holding.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED.  CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE ADMINISTRATIVE LAW JUDGE'S DECISION.  COSTS TO BE PAID BY RESPONDENT.**