806 A.2d 662

**Barbara MEHRLING**

v.

**NATIONWIDE INSURANCE COMPANY.**

No. 126, Sept. Term, 2001.

Court of Appeals of Maryland.

Sept. 9, 2002.

**42**

Charles Goetz (Joseph T. Mallon, Jr. and Steven J. McCool of Mallon & McCool, LLC, on brief), Baltimore, for Petitioner.

Patricia McHugh Lambert (Lynn Edwards Brenneman of Hodes, Ulman, Pessin & Katz, P.A., on brief), Towson, for Respondent.

BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, J.

The Insurance Commissioner of the Maryland Insurance Administration ("the MIA") entered a Final Order[1] on 19 July 1999, purporting to dispose of a complaint filed with the MIA by Barbara Mehrling, Petitioner, against Nationwide Insurance Company ("Nationwide"), Respondent, challenging the termination of her contract as a Nationwide agent. The Final Order adopted the recommended decision of the administrative law judge ("ALJ") of the Office of Administrative Hearings ("OAH") dismissing Petitioner's complaint on the ground that Mehrling had been divested of individual standing to pursue the claim due to her pending bankruptcy case.[2] After receipt of the ALJ's proposed decision, Petitioner filed exceptions with the MIA which included evidence that her bankruptcy case had been dismissed five days before the ALJ issued his proposed decision, a fact not made known to the ALJ. The Associate Deputy Commissioner, *see supra* note 1, nonetheless adopted the ALJ's recommended decision to dismiss Petitioner's complaint for lack of standing. Petitioner's subsequent motion for reconsideration, treated by the Associate Deputy Commissioner as a Motion for Rehearing, was denied.

Petitioner sought judicial review in the Circuit Court for Carroll County. The Circuit Court affirmed the MIA's final decision, ruling essentially that Petitioner's failure to present

---

1. The Final Order was issued by the Associate Deputy Commissioner, on behalf of the Maryland Insurance Commissioner, pursuant to Maryland Code (1997 Repl.Vol., 1998 Supp.), Insurance Article, § 2–210(d), which provides that "[t]he Commissioner may delegate to the Deputy Commissioner, an associate deputy commissioner, or an associate commissioner the responsibility for holding a hearing under this section [ (§ 2–210) ] or § 4–114 [ (Cease and desist orders) ] of this article."

   Unless specified otherwise, all statutory citations herein to the Insurance Article are to this edition of the Maryland Code.

2. The Final Order, like the ALJ's recommended decision, was based on *Pacific Mortgage & Investment Group, Ltd. v. Horn*, 100 Md.App. 311, 319, 641 A.2d 913, 917 (1994), which held that the "bankruptcy trustee is the proper party to bring an action for injury to a person's property while a bankruptcy case is open."

evidence of her bankruptcy dismissal to the ALJ precluded her from later presenting it to the MIA in her exceptions. Petitioner timely filed an appeal with the Court of Special Appeals, which affirmed the judgment of the Circuit Court. Petitioner filed with this Court a petition for writ of certiorari, which was granted, *Mehrling v. Nationwide*, 368 Md. 239, 792 A.2d 1177 (2002), so that we might consider the following question:

> 1. Did the court and administrative bodies below err in affirming the decision to grant [Respondent's] motion to dismiss on the ground that Petitioner lacked standing to bring her claim? [3]

The instant case is governed by the contested case provisions of the Administrative Procedure Act ("APA"), Maryland Code (1995 Repl.Vol., 1998 Supp.), State Government Article, §§ 10–201–10–227 ("APA §§ 10–201–10–227"),[4] as supplemented by the Rules of Procedure of the OAH codified in the Code of Maryland Regulations ("COMAR") 28.02.01 and regulations

---

**3.** In her brief in this Court, Petitioner framed the following additional question not contained in her petition for writ of certiorari:

> A. Did the Court of Special Appeals err in upholding the Circuit Court's finding that the [Associate] Deputy Commissioner did not abuse his discretion in affirming the Administrative Law Judge's recommended decision because the decision was not supported by law in that it failed to follow the dictates of *Pacific Mortgage and Investment Group, Ltd. v. Horn*, 100 Md.App. 311, 641 A.2d 913 (1994), which held that where the pending litigation is abandoned by the trustee, 11 U.S.C. § 554, the debtor has standing to bring suit, and thus Appellant Mehrling has standing to bring this suit?

As this question was not presented in Mehrling's petition for writ of certiorari, and in view of our disposition in this case, we shall not address it here. *See* Maryland Rule 8–131(b) (stating that, on appeal, "the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals."). *See also Gigeous v. E. Corr. Inst.*, 363 Md. 481, 485 n. 2, 769 A.2d 912, 915 n. 2 (2001).

**4.** Unless specified otherwise, all statutory citations herein to the Administrative Procedure Act ("APA") are to Md.Code (1995 Repl.Vol., 1998 Supp.), State Government Art., §§ 10–201–10–227("APA §§ 10–201–10–227").

promulgated by the MIA in COMAR 31.02.02.[5]  An overview
of the relevant statutes and regulations is provided in Part II
of this opinion.

## I.

### Factual and Procedural Background

#### A. Petitioner's underlying claim against Respondent.

On 2 September 1997, Petitioner filed a complaint with the
MIA[6] alleging that Respondent wrongfully terminated her
contract as a Nationwide agent in violation of Insurance Art.,
§ 27–503(d).[7]  After an investigation, the MIA found no viola-
tion of Maryland insurance laws, and so notified Petitioner by
letter dated 8 June 1998.  On 6 July 1998, Petitioner request-
ed a hearing regarding the MIA's decision.  The MIA delegat-

---

**5.**  Citations herein to COMAR, Title 31, are to the citation designations
as currently codified.  While certain COMAR regulations may have
appeared in different citation format at the time of the events relevant
to this appeal, unless otherwise noted, no substantive changes to the
regulations discussed herein have occurred in the interim.

**6.**  The MIA has jurisdiction over this matter by virtue of Insurance Art.,
§ 1–201, which provides that "[a] person that engages in or transacts
insurance business in the State, or performs an act relative to a subject
of insurance resident, located, or to be performed in the State, shall
comply with each applicable provision of this [Insurance] article."

A "person" is defined as "an individual, receiver, trustee, guardian,
personal representative, fiduciary, representative of any kind, partner-
ship, firm, association, corporation, or other entity."  Insurance Art.,
§ 1–101(bb).  Petitioner's wrongful termination complaint against Re-
spondent brought her claim within the purview of the MIA.

**7.**  Specifically, Petitioner alleged that Respondent discriminated against
her in terminating her contract as a Nationwide agent.  Insurance Art.,
§ 27–503(d), provides that "an insurer may not cancel or amend a
written agreement with an agent or broker or refuse to accept business
from the agent or broker if the cancellation, amendment, or refusal is
arbitrary, capricious, unfair, or discriminatory."  As relief, Petitioner
sought, *inter alia*, reinstatement of her agency contract and restitution
including lost commissions.

An "agent" is defined as "a person that, for compensation, solicits,
procures, negotiates, or makes insurance contracts . . . or the renewal
or continuance of these insurance contracts for persons issuing the
insurance contracts."  Insurance Art., § 1–101(c)(1).

ed its authority to conduct the hearing and to issue a proposed decision to the OAH, and the matter was assigned to an ALJ.

In accordance with the schedule issued by the ALJ, discovery was to be completed by 6 November 1998. On 19 October 1998, Respondent submitted its first request for production of documents to Petitioner. Petitioner's counsel requested, and received, extensions of the discovery deadline until the end of November. Ultimately he failed to respond. On 12 February 1999, Respondent filed a Motion to Compel Petitioner to produce certain documents. The ALJ granted Respondent's motion on 23 February 1999, ordering Petitioner to produce a written response within ten days from entry of the Order. Petitioner had not complied with that Order as of 26 April 1999, the date the ALJ filed his recommended decision.

## B. Petitioner's bankruptcy and Respondent's Motion to Dismiss for lack of standing.

On 11 December 1997, several months after Petitioner filed her complaint with the MIA, Petitioner and her husband filed for relief under Chapter 13 of the Bankruptcy Code, Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Maryland. On 19 August 1998, Petitioner's Chapter 13 bankruptcy case was dismissed subject to Bankruptcy Code, 11 U.S.C. § 109(g), which restrained Petitioner from filing any further petitions in bankruptcy for 180 days from the date of dismissal.[8]

On 10 November 1998, Petitioner and her husband filed for relief under Chapter 7 of the Bankruptcy Code, Title 11 of the

---

8. Bankruptcy Code, 11 U.S.C. § 109(g) provides that:

[N]o individual or family farmer may be a debtor under [Title 11] who has been a debtor in a case pending under [Title 11] at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of [Title 11].

United States Code, in the United States Bankruptcy Court for the District of Maryland. Petitioner failed to disclose in her bankruptcy filings and schedules her pending administrative action against Respondent.[9]

On 1 February 1999, Respondent filed in the MIA administrative proceeding a motion to dismiss Petitioner's complaint, arguing that by virtue of her Chapter 7 bankruptcy filing her alleged claim against Respondent properly belonged to the bankruptcy estate, and therefore a bankruptcy trustee alone had standing to pursue the claim against Nationwide on behalf of the bankrupt estate. Petitioner requested an extension, until 15 March 1999, to respond to Respondent's motion to dismiss. On 25 March 1999, after Petitioner failed to respond within the requested deadline, Respondent renewed its motion to dismiss for lack of standing, and also requested that the case be dismissed due to Petitioner's failure to comply with the ALJ's discovery Order discussed *supra*.

On 21 April 1999, the Bankruptcy Judge issued an Order Dismissing Case of Ineligible Debtors ("Order") that dismissed Petitioner's Chapter 7 bankruptcy case, effective as of the date the petition was filed (10 November 1998). The Order indicated that Petitioner was ineligible for relief under her Chapter 7 filing because it had been filed erroneously within 180 days of the date (19 August 1998) her Chapter 13 bankruptcy case had been dismissed. *See* Bankruptcy Code, 11 U.S.C. § 109(g), *supra* note 8. As noted *supra*, Petitioner failed to inform the ALJ of this action.

On 26 April 1999, the ALJ issued a Recommended Decision on Respondent's motion to dismiss. That decision, together with the record compiled before the OAH, was submitted to the MIA. Relying on *Pacific Mortgage and Investment Group*,

---

9. In the signed Statement of Financial Affairs form filed with Petitioner's bankruptcy petition on 10 November 1998, the following question appears: "List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Petitioner responded by placing an "X" in the box designating "none."

*Ltd. v. Horn*, 100 Md.App. 311, 319, 641 A.2d 913, 917 (1994) (citations omitted), the ALJ first determined that the "bankruptcy trustee is the proper party to bring an action for injury to a person's property while a bankruptcy case is open." Finding that Petitioner's "claim against [Respondent] was in existence at the time she petitioned for bankruptcy," the ALJ determined that the claim was a part of Petitioner's bankruptcy estate and thus the "bankruptcy trustee [was] the only person with standing to pursue this claim." Accordingly, the ALJ concluded that Petitioner "lacked standing to pursue her complaint," and therefore had "failed to state a claim for which agency relief may be granted." The ALJ recommended that Respondent's motion to dismiss Petitioner's complaint for lack of standing be granted. Because Petitioner had not advised the ALJ of the dismissal of the bankruptcy case, that fact was not considered by the ALJ at the time he issued his proposed decision.

On 14 May 1999, Petitioner timely filed with the MIA written exceptions to the ALJ's recommended decision, attaching to the exceptions a copy of the Order dismissing her Chapter 7 bankruptcy case. Arguing that the bankruptcy case was dismissed, effective as of the date it was filed, and therefore she had standing to maintain her claim against Nationwide, Petitioner asked that her complaint be "reinstated for a hearing on the merits before the OAH." On 28 May 1999, Respondent moved to strike Petitioner's exceptions, arguing, in essence, that the Associate Deputy Commissioner was confined to considering solely the evidentiary record made before the ALJ and that Petitioner failed to act with diligence throughout the administrative proceeding, including not informing the ALJ of the dismissal of the bankruptcy matter. No apparent action was taken by the MIA on the motion to strike.

On 19 July 1999, the Associate Deputy Commissioner issued a Final Order in the matter, which reads, in pertinent part:

I have carefully evaluated the documentary record in this case, the Exceptions filed by the [Petitioner] and the [Respondent], and the Recommended Decision of [the ALJ].

Based thereupon, I am persuaded that the ALJ's Conclusions of Law, based upon his detailed Findings of Fact pursuant to COMAR 31.02.02.12B and well thought out Discussion are correct.

THEREFORE, it is hereby

ORDERED, that the Recommended Decision of [the ALJ] to dismiss [Petitioner's] appeal, be adopted as the Commissioner's Final Order. . . .

Petitioner promptly moved for reconsideration of the Final Order, and Respondent replied to it. In his Order dated 11 August 1999, the Associate Deputy Commissioner denied Petitioner's motion, stating "I have considered the Motion for Reconsideration, which I am treating as a Motion for Rehearing, and I have also considered the Response of Nationwide. I find there is no valid reason to grant a rehearing in this matter."

## C. *Judicial review of the Final Order.*

Petitioner sought judicial review in the Circuit Court for Carroll County of the MIA's Final Order. Petitioner[10] argued that the Associate Deputy Commissioner, having "exercised his discretion" to consider evidence of Petitioner's bankruptcy dismissal, nonetheless failed to "recognize the import" of this evidence, and therefore his final order dismissing Petitioner's complaint for lack of standing was erroneous, not supported by substantial evidence, and arbitrary or capricious. Respondent, on the other hand, claimed that Petitioner was not allowed to introduce new evidence of her bankruptcy dismissal through the vehicle of her exceptions. It asserted that exceptions are "limited to . . . simply a review of the evidence" compiled before the ALJ. Observing that the administrative record before the ALJ was silent as to Petitioner's bankruptcy dismissal, Respondent contended that the Associate Deputy Commissioner's Final Order was "supported by substantial

---

**10.** Petitioner changed counsel at some point following the administrative process.

evidence in the administrative record."[11]  In rebuttal, Petitioner denied Respondent's contention that the administrative record closed with the ALJ's proposed decision, remarking that "even if the [c]ourt were to somehow accept Respondent's argument, their case still fails, because the [Associate Deputy] Commissioner properly exercised his discretion to accept this evidence."

On 6 December 2000, the Circuit Court affirmed the MIA's Final Order, opining that "[P]etitioner cannot present evidence contesting [Respondent's] Motion to Dismiss when she failed to provide [the ALJ] with any [such] evidence," in spite of "ample opportunity" to do so.  (Citing *Osztreicher v. Juanteguy*, 338 Md. 528, 535, 659 A.2d 1278, 1281–82 (1995) ("A party who does not offer evidence on an issue as to which that party has the burden of proof acquiesces in the adverse judgment entered on that issue.") (citation omitted)).  Moreover, while the court recognized the broad "discretion of an administrative agency to admit evidence after a hearing," *see Md. State Police v. Zeigler*, 330 Md. 540, 557, 625 A.2d 914, 922 (1993), it refused to "assign it more weight than what it was afforded by the [Associate Deputy] Commissioner."

Petitioner timely filed an appeal to the Court of Special Appeals which, in an unreported decision, affirmed the judgment of the Circuit Court affirming the Final Order.  Citing *Pacific Mortgage*, 100 Md.App. at 319, 641 A.2d at 917, the intermediate appellate court first determined that a bankruptcy trustee alone has standing to pursue a claim on behalf of the bankruptcy estate.  As did the Circuit Court, the Court of Special Appeals found that Petitioner "had the opportunity to present evidence to the ALJ from which a factual finding that

---

11.  The MIA, in the Circuit Court, adopted the position of Respondent, adding further that the "purpose and goal of exceptions is to review the Administrative Law Judge's proposed decision. . . . It is not a de novo hearing where a litigant, who fails to provide evidence before the Administrative Law Judge, can simply submit it anew."  The MIA, however, has not offered overt support of Respondent in the proceeding before this Court, so we do not respond here to the MIA's argument below.

her bankruptcy petition had been dismissed could be made," but made "no attempt" to do so. While noting that Petitioner eventually submitted evidence of her bankruptcy dismissal to the MIA, the intermediate appellate court explained that "[t]he circuit court, sitting as an appellate court, . . . cannot go outside the record compiled by the ALJ and, based on some supplemental facts, reach a different ruling." (Citing *Motor Vehicle Admin. v. Karwacki,* 340 Md. 271, 280, 666 A.2d 511, 515 (1995) (stating that a reviewing court must defer to an agency's factual findings and must not make an independent assessment of the evidence); COMAR 31.02.02.12, *see infra* page 16). The court further explained that while the Associate Deputy Director had the discretion to consider the supplemental evidence, he was not required to do so.

We shall supply additional facts *infra* as necessary to our discussion of the issues.

## II.

We believe it instructive to our analysis to provide an overview of the relevant statutes and regulations that govern the administrative process in the instant case.[12] Under Insurance Art., § 2–210(a)(2),[13] any person claiming to be aggrieved by a decision of the Commissioner is entitled to a hearing on

---

12. As previously indicated, the Rules of Procedure promulgated by the OAH in COMAR 28.02.01, and the regulations promulgated by the MIA in COMAR 31.02.02, complement the contested case provisions of the APA. Where the regulations are duplicative of each other and the statute, we shall cite only to the statute unless there are substantive differences between the statute and regulation that require noting, or a party or lower court specifically relied on a particular regulation.

13. Insurance Art., § 2–210 concerns contested case hearings conducted by the Insurance Commissioner under authority of the Insurance Article. Section 2–210(a)(2) provides in pertinent part,

The Commissioner shall hold a hearing:
    (i) if required by any provision of this [Insurance] article; or
    (ii) on written demand by a person aggrieved by any act of, threatened act of, or failure to act by the Commissioner or by any report, regulation, or order of the Commissioner, except an order to hold a hearing or an order resulting from a hearing.

the matter. A hearing held pursuant to Insurance Art., § 2–210 is conducted in accordance with the contested case provisions of the APA §§ 10–201–10–227.[14] *See* Insurance Art., § 2–210(c).[15]

Pursuant to APA § 10–205(a)(1), an administrative agency may "delegate the authority to conduct the contested case hearing to: ... the Office [of Administrative Hearings]," which in turn assigns the matter to an ALJ.[16] An agency may delegate to the OAH the authority to issue:

(1) proposed or final findings of fact;

(2) proposed or final conclusions of law;

(3) proposed or final findings of fact and conclusions of law;

(4) proposed or final orders or orders under Article 49B of the Code; [17] or

(5) the final administrative decision of an agency in a contested case.

APA § 10–205(b).

The Rules of Procedure codified at COMAR 28.02.01 govern all hearings conducted by the OAH, and serve to supplement the procedures required by statute. *See* APA § 10–

---

**14.** Pursuant to APA § 10–202(d), a "contested case" is defined as:

a proceeding before an agency to determine:

  (i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing; or

  (ii) the grant, denial, renewal, revocation, suspension, or amendment of license that is required by statute or constitution to be determined only after an opportunity for an agency hearing.

**15.** Insurance Art., § 2–210(c) provides that "a hearing held under this section [(§ 2–210)] shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article (Administrative Procedure Act—*Contested Cases* )."

**16.** Pursuant to APA § 9–1604(a)(4), the Chief Administrative Law Judge of the OAH "shall ... assign administrative law judges to conduct hearings in contested cases." *See* APA § 9–1605 (concerning ALJ's generally).

**17.** Maryland Code (1957, 1998 Repl.Vol.), Art. 49B concerns matters relating to the Human Relations Commission.

$206(a)(1).$[18] In addition, the APA authorizes an agency to adopt its own regulations to govern procedures in contested case hearings. *See* APA § 10–206(b).[19] The MIA has promulgated regulations in COMAR 31.02.02 governing how a contested case hearing is to be conducted by the OAH, and the Commissioner "retain[s] authority over delegated cases to the extent provided in th[at] chapter." COMAR 31.02.02.01B.

Section 10–213 of the APA specifies with particularity the evidence which may be offered and considered in a contested case, and provides generally that "[e]ach party in a contested case shall offer all of the evidence that the party wishes to have made part of the record." APA § 10–213(a)(1). "Findings of fact must be based exclusively on the evidence of record in the contested case proceeding and on matters officially noticed in that proceeding." APA § 10–214(a).

If the MIA has not delegated to the OAH the authority to make the final decision in a contested case or category of contested cases, as in this case, the ALJ prepares a proposed decision[20] containing "proposed findings of fact, conclusions of law, or orders in accordance with the agency's delegation under § 10–205 of this [ (Administrative Procedure Act— *Contested Cases* ) ] subtitle." APA § 10–220(a). The proposed decision is submitted by the OAH to the Commissioner for his or her consideration and a final decision in the matter. *See* APA § 10–220(a). Upon motion of a party, the ALJ also

---

**18.** Pursuant to APA § 10–206(a)(1), the OAH "shall adopt regulations to govern the procedures and practice in all contested cases delegated to the Office [of Administrative Hearings] and conducted under this [ (Administrative Procedure Act—*Contested Cases* ) ] subtitle."

**19.** Pursuant to APA § 10–206(b), "[e]ach agency may adopt regulations to govern procedures under this [ (Administrative Procedure Act— *Contested Cases* ) ] subtitle and practice before the agency in contested cases."

**20.** Pursuant to COMAR 28.02.01.02B(9), a "proposed decision" is a "document issued by an administrative law judge in accordance with an agency's delegation under State Government Article § 10–205, Annotated Code of Maryland, when final decision-making authority has not been vested in the Office, and includes recommended decisions."

may issue a proposed or final decision (depending upon the delegation of authority by the MIA) "dismissing a complaint or other agency action, or any request for hearing which fails to state a claim for which agency relief may be granted." COMAR 28.02.01.16B. A proposed decision dismissing a complaint is reviewed by the Commissioner in the same manner as any proposed decision.

Upon receipt of an ALJ's proposed decision, the affected parties may file exceptions with the agency.[21] *See* APA § 10–216(a). Pursuant to APA § 10–216(a)(1)(i) & (ii), in the case where the final administrative decision maker, who is an individual,[22] did not preside personally over the contested case hearing, as in the present case,

the final decision may not be made until each party is given notice of the proposed decision in accordance with § 10–220 of this [ (Administrative Procedure Act—*Contested Cases* ) ] subtitle and an opportunity to:

(i) file exceptions with the agency to the proposed decision; and

(ii) present argument to the final decision maker that the proposed decision should be affirmed, reversed, or remanded.

Under COMAR 31.02.02.10C, "[e]xceptions to the proposed decision shall be in writing unless specified otherwise by the final decision maker." In considering a party's exceptions, the final administrative decision maker, in this case the Associate Deputy Commissioner, "shall personally consider each part of the record that a party cites in its exceptions or arguments before making a final decision." APA § 10–216(a)(3).

The record before the Commissioner consists of:

---

21. Pursuant to COMAR 31.02.02.10A, "[u]pon receipt of the proposed decision, the parties affected have: ... 20 days after receipt to file exceptions to the proposed order with the Commissioner."

22. While not applicable in the instant case, the process is different in the case of a multi-person decision-making body. *See* APA § 10–216(a)(2).

(1) all motions and pleadings;

(2) all documentary evidence that the agency or Office [of Administrative Hearings] receives;

(3) a statement of each fact of which the agency or Office [of Administrative Hearings] has taken official notice;

(4) any staff memorandum submitted to an individual who is involved in the decision making process of the contested case by an official or employee of the agency who is not authorized to participate in the decision making process;

(5) each question;

(6) each offer of proof;

(7) each objection and the ruling on the objection;

(8) each finding of fact or conclusion of law proposed by:

  (i) a party; or

  (ii) the presiding officer;

(9) each exception to a finding or conclusion proposed by a presiding officer; and

(10) each intermediate proposed and final ruling by or for the agency, including each report or opinion issued in connection with the ruling.

APA § 10–218.

The Commissioner then issues a Final Order in the matter:

A.  Issuance. After consideration of the administrative law judge's proposed decision, and any exceptions filed by the parties, the Commissioner shall issue a final order or a remand order.

B.  Effect of Findings of Fact, Proposed Conclusions of Law, and Proposed Order.  In reviewing the administrative law judge's proposed decision, the Commissioner is:

  (1) Bound by the findings of fact that are supported by competent, material, and substantial evidence; and

  (2) Not bound by any legal analysis, proposed conclusions of law, or proposed order.

C.  Types of Action by the Commissioner.  The Commissioner may affirm, reverse, or modify the proposed decision

or remand the case to the Office [of Administrative Hearings] for further proceedings by setting forth, with particularity, the basis for the Commissioner's reversal, modification, or remand of the proposed decision.

COMAR 31.02.02.12. *See also* APA § 10–221 *infra* (concerning the contents of final decisions and orders).

If the final decision or order is adverse to a party, it must be "in writing or stated on the record." APA § 10–221(a). The final decision must contain separate statements of:

    (i) the findings of fact;

    (ii) the conclusions of law; and

    (iii) the order.

(2) A written statement of appeal rights shall be included with the decision.

(3) If the findings of fact are stated in statutory language, the final decision shall state concisely and explicitly the facts that support the findings.

APA § 10–221(b).

### III.

When conducting judicial review of a contested case decision of a State administrative agency governed by the APA, an appellate court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

    (i) is unconstitutional;

    (ii) exceeds the statutory authority or jurisdiction of the final decision maker;

    (iii) results from an unlawful procedure;

    (iv) is affected by any other error of law;

    (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

APA § 10–222(h).

We review an administrative agency's decision "under the same statutory standards as the Circuit Court." *Gigeous v. E. Corr. Inst.,* 363 Md. 481, 495, 769 A.2d 912, 921 (2001) (footnote omitted). Therefore, "we reevaluate the decision of the agency, not the decision of the lower court." *Gigeous,* 363 Md. at 495–96, 769 A.2d at 921 (citing *Public Serv. Comm'n v. Balt. Gas & Elec. Co.,* 273 Md. 357, 362, 329 A.2d 691, 694–95 (1974)). In reviewing an administrative agency decision, we are " 'limited to determining if there is substantial evidence in the record as a whole to support the agency's finding and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999) (quoting *United Parcel Serv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994)). In applying the substantial evidence test to questions of fact,

> a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court 'must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence.

*Banks,* 354 Md. at 68, 729 A.2d at 380–81 (alterations in original) (citations omitted).

*Md. Div. of Labor and Indus. v. Triangle Gen. Contractors, Inc.,* 366 Md. 407, 416, 784 A.2d 534, 539 (2001).

## IV.

The validity *vel non* of the Court of Special Appeals's holding in *Pacific Mortgage & Investment Group, Ltd. v.*

*Horn* concerning a bankruptcy trustee's standing to pursue claims on behalf of a bankrupt estate is not before us in the instant case. Accordingly, we shall accept, without critical comment, the holding in that case for purposes of our analysis here. The parties' dispute in the present case begins with their respective assertions as to what constitutes the administrative record before the MIA when the Final Order was issued. Petitioner contends the supplemental evidence of Petitioner's bankruptcy dismissal was properly before, and considered by, the Associate Deputy Commissioner. Citing COMAR 31.02.02.10E,[23] Petitioner asserts that the administrative record before the MIA included her written exceptions and attachments. Petitioner argues that there is nothing in the APA or corresponding regulations that prohibit Petitioner from submitting new evidence in support of her exceptions. Even were there some regulatory limitation in that regard, Petitioner claims that the Associate Deputy Commissioner in fact exercised his discretion to consider this evidence, made apparent by his statement in the Final Order that he "carefully evaluated the documentary record in this case, [and] the Exceptions filed by [Petitioner]." *See supra* pages 7–8. Accordingly, Petitioner asserts that the Associate Deputy Commissioner's Final Order is erroneous, unsupported by substantial evidence in the record, and arbitrary or capricious.

Respondent disputes Petitioner's contention that new evidence introduced by way of her exceptions was a part of the administrative record before the MIA, arguing that exceptions are confined to a *review* of the record that was compiled by

---

**23.** Pursuant to COMAR 31.02.02.10E, the record before the Commissioner for the exceptions shall consist of:

   (1) The administrative law judge's findings and conclusions, including the findings of fact, conclusions of law, and proposed order;
   (2) Any exceptions filed by a party;
   (3) Notice to the parties of the hearing;
   (4) Any documentary evidence admitted into evidence by the administrative law judge; and
   (5) The transcript of the hearing before the administrative law judge, if requested and filed by one of the parties or the Commissioner.
   *See also* APA § 10–218, *supra* page 15.

the ALJ. (Emphasis added). Citing COMAR 31.02.02.12(B), *see supra* pages 15–16, Respondent observes that "[i]n reviewing the administrative law judge's proposed decision, the Commissioner is *bound* by the findings of fact that are supported by competent, material, and substantial evidence." (Emphasis added by Respondent). Respondent extrapolates from this regulation the notion that "the Commissioner is confined to the factual record that was before the administrative law judge." Noting that the administrative record was "void" of any evidence from which a factual conclusion could be reached that Petitioner had administrative standing, Respondent contends the MIA's final decision should be affirmed.

We commented earlier, to some extent, on judicial review of a final decision or order of an administrative agency. *See supra* pages 16–18. We summarize the relevant principles here as they undergird our analysis in this matter. Aggrieved by the final decision of the MIA, Petitioner was entitled to seek judicial review of the decision as provided in APA § 10–222(a)(1). As often stated, in reviewing an agency's decision under the APA, a court ordinarily is "confined to the record" made before the administrative agency. APA § 10–222(f)(1). *See Coleman v. Anne Arundel County Police Dep't,* 369 Md. 108, 121, 797 A.2d 770, 778 (2002) (explaining that judicial review is " 'limited to determining if there is substantial evidence' in the administrative record as a whole 'to support the agency's findings and conclusions.' ") (citation omitted); *Dep't of Health and Mental Hygiene v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051, 1060 (2001) (noting that a reviewing court is restricted to the record made before the administrative agency). *See also supra* page 17.

A reviewing court may remand the case for further proceedings, affirm the final decision, or reverse or modify an administrative agency's decision if "any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision" is, *inter alia,* erroneous, "unsupported by competent, material, and substantial evidence *in light of the entire record* as submitted," or "arbitrary or capricious." APA § 10–222(h). (Emphasis added).

█ The initial question we confront is when does the administrative record close for the receipt of evidence in a contested case under the APA where the administrative agency reserves final decision-making authority? We hold that, for purposes of judicial review of an agency's final decision, the entire administrative record consists of all transcripts, documents, information, and materials [24] that were before the final decision maker at the time of his or her decision. We base our conclusion on the following reasons.

█ First, it is the function of the court on judicial review of an agency's action to review the "final decision" in a contested case. APA § 10–222(a)(1). Where, as here, the administrative agency retained the authority to make the final decision, we review the final decision of the agency, and not the ALJ's recommended decision. It follows, then, that the "entire" administrative record consists of all materials and information the agency had before it at the time it reached its final decision. This notion is consistent with the principle that an "administrative agency has broad discretion to consider evidence submitted after the close of an evidentiary hearing as long as there is compliance with procedural due process." *Zeigler,* 330 Md. at 557, 625 A.2d at 922 (citing *Schultz v. Pritts,* 291 Md. 1, 7–10, 432 A.2d 1319, 1323–24 (1981) (documentary evidence submitted to the agency several days after the hearing but before the agency's decision); *Montgomery County v. Nat'l Capital Realty,* 267 Md. 364, 375–76, 297 A.2d 675, 681–82 (1972) (documentary evidence submitted to and considered by the zoning body after the hearing); and other cases cited therein). An agency's ability to consider post-hearing evidence necessarily contemplates that such evidence becomes a part of the administrative record.

█ Second, as part of the administrative process the APA (and complementary regulations) provide a party with a

---

**24.** Maryland Rule 7–206 defines the administrative "record" that is to be submitted on judicial review in the Circuit Court as "the transcript of testimony and all exhibits and other papers filed in the agency proceeding."

"last chance" opportunity to persuade the agency that an ALJ's proposed decision should be "affirmed, reversed, or remanded." APA § 10–216(a)(1). In this regard, a party aggrieved by the ALJ's recommended decision may file exceptions. *See* APA § 10–216, *see supra* pages 14–15; COMAR 31.02.02.10A, *see supra* note 21. *See also* COMAR 28.02.01.22B(2).[25] Moreover, under APA § 10–218(9), exceptions are deemed a part of the record that is before the agency in making its final determination. As Petitioner correctly points out, there is nothing in the statute [26] or corresponding regulations that would preclude a party from offering new evidence in support of the party's exceptions, subject to satisfaction of due process consideration before such evidence may be admitted. Respondent offers no cases, and we are aware

---

**25.** Pursuant to COMAR 28.02.01.22B(2), "[w]hen permitted by law, an adversely affected party may: (a) File exceptions to the proposed decision; and (b) Present oral argument to the final decision maker."

**26.** Insurance Art., § 2–215(g) concerns the contents of the "record on appeal" of an administrative agency for judicial review. In pertinent part it provides:

(1) In an appeal of an order resulting from a hearing, after receiving a copy of the petition for judicial review and within the time specified in the Maryland Rules, the Commissioner shall file in the court in which the appeal is pending:

(i) a copy of the order of the Commissioner from which the appeal is taken;

(ii) a complete transcript, certified by the Commissioner, of the record on which the order was issued; and

(iii) all exhibits and documentary evidence introduced at the hearing.

Although not argued in Respondent's brief, in oral argument Respondent asserted that Insurance Art., § 2–215(g)(iii) confines a "record on appeal" to all "documentary evidence introduced at the *hearing*." We do not agree. Section 2–215(g) does not present an exhaustive list of all the materials that may be considered. Most notably missing from this compilation is an ALJ's recommended decision and order, *see* COMAR 31.02.02.12G(3) (noting that "if a party appeals from a final order of the Commissioner that summarily affirms the proposed decision of an administrative law judge, in addition to filing the final order of the Commissioner with the court in which the appeal is pending, the Commissioner also shall file a copy of the proposed decision of the administrative law judge), exceptions that may be filed by an adversely affected party, and the evidence that may be admitted after the close of an adjudicative hearing (subject to due process considerations).

of none that have construed so narrowly these provisions. Indeed, it would appear that filing exceptions is the only appropriate method for a party to present post-hearing evidence for an agency's possible consideration. *Zeigler,* 330 Md. at 557, 625 A.2d at 922, and cases cited therein. We merely recognize that written exceptions are a part of the administrative process, and therefore, evidence offered in exceptions may become, unless properly rejected by the agency, a part of the administrative record, subject to the final administrative decision maker's ruling on whether to admit and consider such evidence.

Accordingly, we hold that the Court of Special Appeals erroneously concluded that a reviewing court "cannot go outside the record *compiled by the ALJ.*" For similar reasons, we hold that the Circuit Court likewise erred.

## V.

We turn now to Petitioner's assertion that the final agency decision is erroneous, not supported by substantial evidence, and arbitrary or capricious because the Associate Deputy Commissioner, having exercised his discretion to consider the evidence of Petitioner's bankruptcy dismissal, nonetheless adopted the ALJ's Recommended Decision to dismiss Petitioner's complaint for lack of standing. We are unable at this time to resolve this question. The difficulty which forestalls our resolution is that the Associate Deputy Commissioner failed to address with sufficient clarity whether he considered the new evidence presented in Petitioner's exceptions, and, if he did consider it, failed to provide a rationale for his findings and conclusions, consistent with that evidence, upon which we may conduct meaningful judicial review.

It is well established by this Court that administrative agencies must comport with the applicable statutory requirement to make meaningful findings of fact and conclusions of law when rendering final decisions. *See Forman v. Motor Vehicle Admin.,* 332 Md. 201, 220, 630 A.2d 753, 763 (1993)

(concluding the findings requirement [27] of the Transportation Article and the APA were not satisfied); *Harford County v. Earl E. Preston, Jr., Inc.*, 322 Md. 493, 505, 588 A.2d 772, 778 (1991) (concluding the agency violated the findings requirement of the Harford County Zoning Code); *United Steelworkers v. Bethlehem Steel Corp.*, 298 Md. 665, 678–79, 472 A.2d 62, 69 (1984) (concluding the findings requirement of the Maryland Occupational Safety & Health Act (MOSHA) was not satisfied). Even in the absence of statutory authority, meaningful findings are required to facilitate judicial review. *See Blackburn v. Bd. of Liquor License Comm'rs*, 130 Md.App. 614, 624, 747 A.2d 725, 730 (2000) (requiring the Board of Liquor License Commissioners to set forth specific findings of fact and conclusions of law, even in the absence of an express requirement to do so). *See also Baker v. Bd. of Trustees*, 269 Md. 740, 747, 309 A.2d 768, 772 (1973) (stating in dictum that "even in the absence of a statutory provision," the right of a party to be apprised of the facts relied upon by an agency in making its decision "is frequently required by a court as an aid to judicial review") (citing 2 DAVIS, ADMINISTRATIVE LAW TREATISE, § 16.05 444–49 (1958)). For those agencies subject to the APA, as is the MIA in the instant case, that requirement is embodied in APA § 10–221(b) (requiring a final decision or order in a contested case to "contain separate statements of: (i) the findings of fact; (ii) the conclusions of law; and (iii) the order."). *See supra* page 16.

The objective of these statutory requirements is two-fold in that it seeks to apprise the parties of the basis for the agency's decision and to facilitate judicial review. *See For-*

---

**27.** The term "findings requirement" refers to the obligation of an agency (or OAH if it has been delegated the authority to make the final decision) to "provide findings of fact on all material issues, and present a clear statement of the rationale for its decision by explaining how it applied the relevant facts to the applicable law." ARNOLD ROCHVARG, MARYLAND ADMINISTRATIVE LAW § 3.71 at 70 (MICPEL 2001). *See Sweeney v. Montgomery County*, 107 Md.App. 187, 197, 667 A.2d 922, 926–27 (1995) (quoting *Balt. Gas and Elec. Co. v. Public Serv. Comm'n*, 75 Md.App. 87, 97–98, 540 A.2d 820, 825 (1988) (discussing the "three principal reasons for the findings requirement")).

*man,* 332 Md. at 220, 630 A.2d at 763 ("The purpose and effect of these [statutory] sections is to provide the parties and, ultimately, a reviewing court, with the ability to understand the basis for the [final decision maker's] decision."); *Preston,* 322 Md. at 505, 588 A.2d at 778 ("This [statutory] requirement is in recognition of fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision and to permit meaningful judicial review of those findings."); *United Steelworkers,* 298 Md. at 679, 472 A.2d at 69 ("We must know what a decision means before the duty becomes ours to say whether it is right or wrong.") (citation omitted) (internal quotations omitted); *Blue Bird Cab Co. v. Md. Dep't of Employment Sec.,* 251 Md. 458, 466, 248 A.2d 331, 335 (1968) (noting that "a fundamental requirement of the due process of law in a quasi-judicial proceeding is the right of the parties to be apprised of the facts relied upon by the tribunal in its decision.").

On prior occasions we have pointed out " 'not only the importance but the necessity that administrative agencies resolve all significant conflicts in the evidence and then chronicle, in the record, full, complete and detailed findings of fact and conclusions of law.' " *Forman,* 332 Md. at 221, 630 A.2d at 764 (quoting *State Comm'n on Human Relations v. Malakoff,* 273 Md. 214, 229, 329 A.2d 8, 17 (1974)). We recently explained that "[f]indings of fact must be meaningful and cannot simply repeat statutory criteria, broad conclusory statements, or boilerplate resolutions." *Bucktail v. Talbot County,* 352 Md. 530, 553, 723 A.2d 440, 451 (1999). *See also Turner v. Hammond,* 270 Md. 41, 55–56, 310 A.2d 543, 551 (1973) (referencing a preprinted form filled out by the local board of zoning appeals to deny an application for a special use exception, we noted that there were "no findings of fact worthy of the name and we think citizens are entitled to something more than a boiler-plate resolution"). This is compelled by the nature of judicial review of an administrative agency's final decision. In *United Steelworkers,* 298 Md. at 679, 472 A.2d at 69, this Court explained:

Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of an agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.

More recently, we explained in *Forman*, 332 Md. at 220–21, 630 A.2d at 763–64:

In order to apply the appropriate standard of review ... the reviewing court first must know how and why the agency reached its decision. It must know what it is reviewing.

. . . .

Without findings of fact on all material issues, and without a clear statement of the rationale behind the [final decision maker's] action, a reviewing court cannot properly perform its function.

. . . .

At a minimum, one must be able to discern from the record the facts found, the law applied, and the relationship between the two.

As a threshold matter in the present case, it is unclear whether the Associate Deputy Commissioner indeed considered the new evidence in Petitioner's exceptions. The exceptions were the subject of a motion to strike, based in part on the alleged lack of diligence on Petitioner's part generally and as to the production of the new evidence particularly. No ruling on the motion to strike was made. Although language in the Final Order recites that the exceptions were "carefully considered," an inference that the new evidence contained there was admitted and considered is beggared by the resultant dismissal grounded on the premise that the pendency of the bankruptcy petition on 26 April 1999, the date the ALJ's

decision was filed, deprived Petitioner of standing to maintain the administrative complaint.

Assuming, *arguendo,* the correctness of the legal conclusion that a bankruptcy trustee alone has standing to pursue a claim on behalf of a bankrupt estate, Petitioner's argument and evidence in her exceptions that the ALJ's finding "was no longer applicable," if the new evidence was admitted and considered, would have created a material dispute that merited a clearer resolution by the Associate Deputy Commissioner. As previously explained, the ALJ was not informed that Petitioner's bankruptcy case had been dismissed prior to issuance of his proposed decision. Accordingly, the ALJ's "detailed" findings of fact and "well-thought out" discussion concerning the rationale for his proposed decision arguably was contrary to evidence that was subsequently provided to the Associate Deputy Commissioner in Petitioner's Exceptions.[28] *See supra* pages 7–8.

Clearly, the Final Order falls far short of comporting with the statutory requirements of the APA, *see supra* page 16, and of providing adequate factual findings and a clear statement of the rationale for the agency's conclusions so as to permit "meaningful" judicial review. Instead, we are left to speculate or guess at a basis for the Associate Deputy Commissioner's decision.

The Associate Deputy Commissioner failed to "resolve all significant conflicts" or make "full, complete and detailed findings of fact and conclusions of law" from which we may perform properly our function. *Forman,* 332 Md. at 221, 630 A.2d at 764. Petitioner presented the MIA with a second opportunity to elaborate on the basis for its decision in her Motion for Reconsideration. Unfortunately, the Associate Deputy Commissioner was not up to the task in his response. Accordingly, the appropriate disposition of this case is to

---

**28.** The Court of Special Appeals, in a footnote, opined that "had [Petitioner] presented evidence that her bankruptcy petitions had been dismissed, she would have prevailed in response to [Respondent's] motion to dismiss for lack of standing."

remand to the MIA to prepare legally adequate findings of fact and conclusions of law based on the administrative record as a whole, with a cautioning note that if evidence of the termination of Petitioner's bankruptcy is admitted into evidence, it may be appropriate for the MIA to remand this matter to the ALJ for his consideration.[29]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY AND TO REMAND THE CASE TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE MARYLAND INSURANCE ADMINISTRATION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT, THE COURT OF SPECIAL APPEALS, AND THE CIRCUIT COURT TO BE PAID BY THE RESPONDENT.**

---

**29.** If the Associate Deputy Commissioner, in exercising agency discretion, clarifies that he chooses to entertain Petitioner's bankruptcy dismissal as evidence, principles of fairness and due process may be implicated. *See Zeigler,* 330 Md. at 557, 625 A.2d at 922 (noting that "an administrative agency has broad discretion to consider evidence submitted after the close of an evidentiary hearing as long as there is compliance with procedural due process"). On the other hand, if he determines to grant, in whole or in part, Respondent's Motion to Strike Petitioner's Exceptions, an explanation of the ground or grounds for that ruling should be supplied.