*Maryland Office of People's Counsel v. Maryland Public Service Commission.*, No. 0789, September Term 2019. Opinion by Wells, J.

**PUBLIC UTILITIES—GAS—STATUTORY INTERPRETATION**

Under Public Utilities Article § 4-211, "when determining necessary and proper expenses while setting a just and proper rate for a gas company," the Maryland Public Service Commission  "may include all costs reasonably incurred by the gas company for performing environmental remediation of real property in response to a State or federal law, regulation or order if the remediation relates to real contamination of real property and the real property is or was used to provide manufactured or natural gas directly or indirectly to the gas company's customers or predecessors."

**PUBLIC UTILITIES—GAS—STATUTORY INTERPRETATION**

Public Utilities § 3-203 requires a court find every final decision or order of the Maryland Public Service Commission is *prima facie* correct and shall be affirmed unless some defect, such as unconstitutionality, exceeding statutory authority, or rendering an arbitrary or capricious decision, among other things, is clearly shown.

**PUBLIC UTILITIES—GAS—STATUTORY INTERPRETATION**

In setting a "just and proper rate," Public Utilities Article § 4-211 does not require the Maryland Public Service Commission to exclude from its calculus a portion of acreage that was formerly unused in the manufacture of natural gas when that same portion of acreage is joined to real property that had, in fact, been used to manufacture gas and now requires environmental remediation.  To do otherwise would render the statute a nullity.

Circuit Court for Baltimore City
Case No. 24-C-18-006881

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0789

September Term, 2019
_____

MARYLAND OFFICE OF PEOPLE'S
COUNSEL

v.

MARYLAND PUBLIC SERVICE
COMMISSION, ET AL.
_____

Reed,
Wells,
Zarnoch, Robert A.,
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Wells, J.
_____

Filed: June 1, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Appellee, Columbia Gas of Maryland, Inc. ("Columbia Gas") sought approval from the Maryland Public Service Commission ("the Commission") to increase utility rates for several reasons among which was to help pay for environmental remediation of its site in Hagerstown. After negotiations, the parties agreed to the rate increase, but could not agree on the addition of the remediation costs. As a result, the parties conducted a hearing before the Chief Public Utility Law Judge ("PULJ"), who ruled that Columbia Gas could include the remediation costs in the rate increase. Appellant, the Maryland Office of People's Counsel ("OPC"), appealed that decision to the Commission, which agreed with the PULJ. OPC then petitioned for judicial review in the Circuit Court for Baltimore City. After a hearing, the circuit court affirmed the Commission. OPC now appeals the circuit court's ruling and raises two issues for our review:

I.      Did the Commission err as a matter of law in failing to apply Public Utilities Article § 4-211's limitation on a gas utility's ability to recover environmental remediation expenses from its customers?

II.     In failing to offer any explanation for its implicit rejection of OPC's argument regarding the Statute's limitation on a gas utility's ability to recover environmental remediation expenses, did the Commission err as a matter of law in violating § 3-113 of the Public Utilities Article, or act arbitrarily or capriciously?

For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On April 13, 2018, Columbia Gas of Maryland ("Columbia Gas") filed an application with the Public Service Commission of Maryland ("the Commission") under Maryland Code, (1998, Repl. Vol. 2019), Public Utilities Article ("PUA") §§ 4-203 and 4-204 to increase its base rates to its customers by $5,999,212.00. The request arose for

multiple reasons, including Columbia Gas' desire to remediate industrial waste from its real property.

## A. The Contaminated Site

The information contained in this section is taken from the findings of the Chief Public Utility Law Judge's ("PULJ") report dated October 2, 2018. These facts are largely undisputed.

From 1887 to 1952, the Hagerstown Heat & Light Plant, later known as the Hagerstown Gas Company, ("Hagerstown Gas") manufactured gas on what was then its approximately seven-acre site located in Hagerstown. The carbureted water-gas process Hagerstown Gas used produced a residue of coal and coke that was discharged into a pond on the company's property. This "tar pond" would become the focus of litigation, including this appeal.

In 1952, Hagerstown Gas sold approximately 2.5 acres of its property, which included the tar pond, to the Bester-Long Company, a road construction business. In 1975, Bester-Long sold the 2.5-acre tract to Richard F. Kline, Inc., another construction company. Twelve years later, in 1987, Kline conveyed 3.85 acres, encompassing the 2.5-acre tar pond site, to Cassidy Trucking, Inc. Cassidy Trucking later expanded its real property holdings to become a 5.82-acre parcel known as "the Cassidy Property."

**B. Commission Case No. 9316: *Columbia Gas I***

In 1986, the Maryland Department of Health and Mental Hygiene ("DHMH") [1] investigated possible environmental contamination at the former Hagerstown Gas site. By 2002, the Maryland Department of the Environment ("MDE"), found that there were likely potentially hazardous by-products from the manufactured gas process on the property. In the words of one MDE report, the area near the former tar pond displayed "elevated levels of constituents common to urban development that may also be associated with MPG (Manufactured Gas Plant) residuals." [2]

Prompted by these investigations and the possible use of the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"),[3] 42 U.S.C. §§ 9601-9675, Columbia Gas' parent company, NiSource, Inc., sought to remediate any waste by-products from its Hagerstown site by participating in Maryland's Voluntary Clean-up

---

[1] As of June 30, 2017, DHMH is called the Maryland Department of Health. The Maryland Department of Health website: shorturl.at/hIOY9

[2] At some point in time the tar pond had been filled-in.

[3] The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §9601 et seq. (1980). The Comprehensive Environmental Response, Compensation, and Liability Act -- otherwise known as CERCLA or Superfund -- provides a Federal "Superfund" to clean up uncontrolled or abandoned hazardous-waste sites as well as accidents, spills, and other emergency releases of pollutants and contaminants into the environment. Through CERCLA, the U.S. Environmental Protection Agency was given power to seek out those parties responsible for any release and assure their cooperation in the cleanup. Information from the United States Environmental Protection Agency website: https://bit.ly/2LLKxBT.

Program ("VCP").[4]   One obstacle to NiSource participating in the VCP was that it did not own the tar pond site, which was then located on the adjacent Cassidy Property.  As NiSource's representative explained at the hearing before the PULJ, NiSource decided to try to purchase the Cassidy Property to "reduce remediation costs, avoid litigation (with Cassidy Trucking and others) and minimize transaction costs associated with its assessment and remediation of the property."

In January 2013, NiSource successfully purchased the Cassidy Property.  That same year, Columbia Gas sought approval from the Commission, in Case No. 9316, for a rate increase to offset the remediation costs, among other reasons.  Following an evidentiary hearing, the PULJ found that the site of the Cassidy Property was not "used and useful" in providing utility service to its customers under the then-operative statute, PUA § 4-101, and did not approve a rate increase.  In other words, the Commission found that because only 2.5 of the Cassidy Property's 5.85 acres had previously been used by Hagerstown Gas for the manufacture of gas, Columbia Gas could not pass on the cost to remediate the Cassidy Property to its customers.  Columbia Gas sought judicial review in the Circuit Court for Washington County, which affirmed the Commission.  Columbia Gas then filed an appeal to this Court.

---

[4] The Maryland Voluntary Cleanup Program or VCP authorized by Maryland Code, (1982, 2013 Repl. Vol.) Environmental Article ("EA") § 7-503(b) is designed to: "(1) Encourage the investigation of eligible properties with known or perceived contamination, (2) protect public health and the environment where cleanup projects are performed or need to be performed; (3) Accelerate cleanup of eligible properties; and (4) Provide predictability and finality to the cleanup of properties."  Information acquired from the Maryland Department of the Environment website: https://bit.ly/3eqPIni.

We affirmed the circuit court. *Columbia Gas v. Public Service Commission*, 224 Md. App. 575 (2015). In reaching our decision, we observed that the Commission's ratemaking policy under PUA § 4-101 required a "just and reasonable rate" that

(1) does not violate any provision of this article;
(2) fully considers and is consistent with the public good; and
(3) except for rates of a common carrier, will result in an operating income to the public service company that yields, after reasonable deduction for depreciation and other necessary and proper expenses and reserves, **a reasonable return on the fair value of the public service company's property used and useful in providing service to the public.**

*Id.* at 582 (emphasis added). After analyzing the record, we concluded that Columbia Gas "failed to demonstrate a nexus between the Cassidy Property and the services its customers received from it to be considered used and useful for ratemaking purposes." *Id.* at 586. We, therefore denied Columbia' request for a rate increase. The Court of Appeals denied Columbia Gas' petition for a writ of certiorari. *Id*. 445 Md. 488 (2015).

**C. A Change in the Law: Public Utilities Article § 4-211**

In response to *Columbia Gas*, during the 2016 session of the General Assembly a bill was introduced to strike the "used and useful" language from PUA § 4-101. That effort failed. However, during the 2017 legislative session, S.B. 355/H.B. 414 passed and became law that same year. Subsequently codified as PUA § 4-211, the statute, in pertinent part, states:

(a)(1) Except as provided in paragraph (3) of this subsection, when determining necessary and proper expenses while setting a just and reasonable rate for a gas company, the Commission may include all costs reasonably incurred by the gas company for performing environmental remediation of real property in response to a State or federal law, regulation, or order if:

5

(i) the remediation relates to the contamination of the real property; and

(ii) the real property is or was used to provide manufactured or natural gas service directly or indirectly to the gas company's customers or the gas company's predecessors.

(2) Environmental remediation costs incurred by a gas company may be included in the gas company's necessary and proper expenses regardless of whether:

(i) the real property is currently used and useful in providing gas service; or

(ii) the gas company owns the real property when the rate is set.

\*       \*       \*

(4) Environmental remediation costs incurred by a gas company may not be included in the gas company's necessary and proper expenses if a court of competent jurisdiction determines that the proximate cause of the environmental contamination is a result of the gas company's failure to comply with a State or federal law, regulation, or order in effect when the contamination occurred.

With this change in the law, Columbia Gas again sought to recover environmental remediation costs for the Cassidy Property.

### D. Commission Case No. 9480: *Columbia Gas II*

In April 2018, Columbia Gas filed a new application with the Commission, designated case number 9480. As a result of negotiations, Columbia Gas, the Office of People's Counsel ("OPC"), and the Commission's technical staff unanimously agreed to each component of a rate increase except the amount for the environmental remediation costs for the Cassidy Property. On July 31, 2018, the PULJ conducted an evidentiary hearing on the issue of the cost of environmental remediation for the Cassidy Property. At

6

the hearing, the Commission Staff and Columbia Gas presented evidence in favor of the rate increase, and OPC presented arguments against.

After the hearing, in a set of findings and a proposed order dated October 2, 2018, the PULJ approved an adjusted rate inclusive of the cost of environmental remediation for the Cassidy Property. In reaching his decision, the PULJ preliminarily found that PUA § 4-211 was not ambiguous and did not require an examination of the statute's legislative history.

As to the merits, the PULJ undertook a straightforward analysis of "how Columbia [Gas'] request to recover remediation costs fits within the statute and its criteria." Looking at the first criteria found in PUA § 4-211(a)(1), whether the remediation costs were incurred as a response to a federal or state regulation or law, the PULJ found that as a result of the DHMH and MDE investigations spanning decades, Columbia Gas entered into the VCP to help pay for the remediation. Further, the PULJ concluded that CERCLA encouraged environmental cleanups of this scale. Although no state or federal body had ordered NiSource to clean up the Columbia Gas site, as OPC noted, the PULJ nonetheless found that the remediation effort clearly was in response to state and federal laws or regulations, as the statute's first prong required.

When considering the second prong, -- that the remediation costs be related to the contamination of real property, -- and third prong -- "the real property is or was used to provide manufactured or natural gas service directly or indirectly to the gas company's customers or the gas company's predecessors," -- the PULJ had reached the heart of the dispute. The PULJ noted that the parties agreed that approximately 4.0 of the 5.82 acres

7

comprising the Cassidy Property required remediation. The parties disagreed whether the customers should bear the cleanup costs of the approximately 1.5 acres not previously used to manufacture gas. OPC asserted that the apportioned costs include only the cleanup of the contaminated 4.0 acres. Columbia Gas argued that the word "relates," as used in the statute, took into account the possibility that contaminants migrate, and, therefore, the cost to remediate all of the Cassidy Property should be factored into a fair rate.

The PULJ agreed with Columbia Gas, finding OPC's calculation of costs would alter the "clear and unambiguous" meaning of the statute by "adding restrictions where none exist." The PULJ reasoned that PUA § 4-211(a)(1)(i-ii) only required the real property in question to have been previously used for the provision of service to manufactured gas customers. The fact that the former tar pond is now part of a bigger parcel, in the PULJ's opinion, was irrelevant. Further, the PULJ found that the spread of contamination could be "directly linked to the tar pond." "The contamination's spread beyond the 2.5 acres is directly linked to manufactured gas service previously provided [to Hagerstown Gas'] customers." More pointedly, the PULJ rejected OPC's argument because he found that OPC was arguing the applicability of the "used and useful" standard when the legislature had specifically written that language out of the statute when it adopted PUA § 4-211.

In the remaining sections of the PULJ's findings, the PULJ undertook an analysis of the financial costs that the Columbia Gas' customers would have to bear, finding that with regard to the Cassidy Property, the cost to remediate the site would be $318,313.00. Any future costs would have to be determined. Additionally, the PULJ analyzed whether

8

any other entities potentially could be liable for the costs of remediation. The PULJ rejected the idea of seeking financial contribution from businesses such as Cassidy Trucking, CSX Realty (from whom Cassidy Trucking purchased a tract that also comprised the Cassidy Property's 5.82 acres), and Central Chemical Corporation, a Superfund site located adjacent to Columbia Gas' site, finding in each case that the evidence was insufficient to hold any of the named businesses responsible for the costs of the cleanup. The PULJ's order incorporated the provisions of the negotiated settlement and included the costs to remediate the Cassidy Property in the proposed rate adjustment.

OPC appealed to the Commission, arguing that PUA § 4-211's language is ambiguous. The Commission disagreed, finding that PUA § 4-211 was not ambiguous. In the Commission's analysis, the legislature's purpose in drafting the statute was to remove the "used and useful" language from PUA § 4-101 and specifically allow Columbia Gas to recover the remediation costs for the Cassidy Property. The Commission reiterated the PULJ's finding that "[t]o attack the statute as ambiguous and rely on extraneous sources to understand the statute[']s meaning is futile." In other words, the Commission found OPC's interpretation of the statute – that would require severing 1.5 acres from the Cassidy Property -- would render the plain language of the statute meaningless. The Commission adopted the PULJ's findings and signed the proposed order.

On December 21, 2018, OPC petitioned for judicial review. Before the Circuit Court for Baltimore City, OPC argued that in properly applying the language of PUA § 4-211 to determine what amount of the remediation costs should be borne by its customers, Columbia Gas was required to subdivide the Cassidy Property into two parcels: one for the

9

property on which Hagerstown Gas manufactured gas and one parcel on which the production of natural gas did not occur. OPC argued the Commission's failure to explain why the property should not be subdivided violated PUA § 3-113 which requires the Commission to state the grounds for its conclusions. As the Commission did not address or otherwise state why the Cassidy Property should not be subdivided, OPC argued the Commission's decision was "arbitrary and capricious."

In response, Columbia Gas and the Commission argued that OPC was attempting to resurrect the "used and useful" requirement from the former statute. Columbia Gas argued that it had met all of the statutory requirements under PUA § 4-211, namely, that the Cassidy Property is, in fact, real property, part of which was used to manufacture gas.

The circuit court sustained the Commission. It found that the contamination located on part of the Cassidy Property, in fact, "related" to real property owned by Columbia Gas which had been used in the manufactured gas process, satisfying the requirements of PUA § 4-211(a)(1)(i) and (ii). The court concluded that the environmental harm continued to spread throughout the whole of the Cassidy Property. Finally, the court concluded that OPC did not prove that the Commission acted unreasonably in reaching its decision. OPC filed a timely appeal.

Additional facts may be discussed, as needed.

## DISCUSSION

I.     **The Commission Properly Applied PUA § 4-211 to Columbia Gas' Request for a Rate Increase**

The central question here is whether the Commission properly included the costs to

10

remediate the entire parcel known as "the Cassidy Property" in setting a new utility rate for the customers that Columbia Gas services. As we will explain, our conclusion is that the Commission's decision was correct.

As in any appeal from judicial review of an agency decision, we look through the decision of the circuit court to examine the agency's ruling. *Maryland Office of People's Counsel v. Maryland Public Service Commission*, 461 Md. 380, 391 (2018) (citing *Accokeek, Mattawoman, Piscataway Creeks Community Council, Inc. v. Public Service Commission*, 451 Md. 1, 11 (2016)). Most importantly, because this is a review of a decision of the Maryland Public Service Commission, Maryland Code, (1998, 2019 Repl. Vol.), PUA § 3-203 controls:

> Every final decision, order, or regulation of the Commission is prima facie correct and shall be affirmed unless clearly shown to be:
>
> (1) Unconstitutional;
> (2) Outside the statutory authority or jurisdiction of the Commission;
> (3) Made on unlawful procedure;
> (4) Arbitrary or capricious;
> (5) Affected by other error of law; or,
> (6) If the subject of review is an order entered in a contested proceeding after a hearing, unsupported by substantial evidence on the record considered as a whole.

Further, we are bound by the Court of Appeals' prior decisions regarding this statute. The Court has stated,

> [w]hile this Court has made clear that a decision of the PSC is subject to judicial review, it will not be disturbed on a basis of a factual question except upon clear and satisfactory evidence that it was unlawful and unreasonable. Such a decision is accorded the respect due an informed agency that is aided by a competent and experienced staff. Questions of law, however, are completely subject to review by the courts. This is consistent

11

with the standard of review applicable to administrative agencies generally. *Severstal Sparrows Point, LLC v. Public Service Commission of Maryland*, 194 Md. App. 601, 610-611 (2010) (quoting *Town of Easton v. Public Service Commission of Maryland*, 379 Md. 21, 31-32 (2003) (internal citations omitted)).

On pure questions of law, our review is de novo. *See Maryland Office of People's Counsel*, 461 Md. at 394 (internal citations omitted). However, we give the Commission's interpretation of a statue it enforces, such as PUA § 4-211, a heightened degree of deference. The Court of Appeals has stated that this degree of deference is dependent on several factors. One factor is the length of time an agency's interpretation has been consistently applied. *Office of People's Counsel v. Public Service Commission*, 355 Md. 1, 17 (1999). Additionally, the Court reasoned that if the agency's decision was reached after a contested adversarial process, then the agency's interpretation of a statute should be afforded greater weight than if the decision was reached without such a process.

> Another important consideration is the extent to which the agency engaged in a process of reasoned elaboration in formulating its interpretation of the statute. When an agency clearly demonstrates that it has focused its attention on the statutory provisions in question, thoroughly addressed the relevant issues, and reached its interpretation through a sound reasoning process, the agency's interpretation will be accorded the persuasiveness due a well-reasoned opinion of an expert body.

*Id.*

In undertaking our analysis, we begin with the text of the relevant portion of the statute, PUA § 4-211, which states:

> (a)(1) Except as provided in paragraph (3) of this subsection, when determining necessary and proper expenses while setting a just and reasonable rate for a gas company, the Commission may include all costs

reasonably incurred by a gas company for performing environmental remediation of real property in response to a State or federal law, regulation, or order if:

    (i)     The remediation relates to the contamination of the real property; and

    (ii)    The real property is or was used to provide manufactured or natural gas service directly or indirectly to the gas company's customers or the gas company's predecessors.

(2)    Environmental remediation costs incurred by a gas company may be included in the gas company's necessary and proper expenses regardless of whether:

    (i)     The real property is currently used and useful in providing gas service; or

    (ii)    The gas company owns the real property when the rate is set.

Before this Court, OPC argues that PUA § 4-211(a)(1)(i) limits which environmental remediation costs Columbia Gas may recover from its customers. In OPC's view, under PUA § 4-211(a)(1)(ii), the costs of remediation may only be associated with land that was once used for manufactured gas service related "directly or indirectly to the gas company's customers or the gas company's predecessors." OPC, citing *Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 128 (2000), argues the Commission's decision rendered this provision "superfluous" or "nugatory," as the Commission did not limit remediation costs only to Columbia Gas' site that was previously "used and useful" for gas service. OPC readily admits that PUA § 4-211 changed the requirement that the land subject to remediation must "currently" be "used and useful." OPC argues PUA § 4-211's plain language requires that the land to be remediated "must have at least been

13

previously used and useful" in the manufacture of gas. In other words, OPC asserts that before Columbia Gas can recover the cost to remediate a parcel of land "some utility customers, even from a different era, did benefit from the land in question."

At the heart of OPC's argument is the fact that of the 5.82 acres that comprised the Cassidy Property only 4.0 acres require remediation. OPC maintains that Hagerstown Gas, Columbia Gas' predecessor, used 2.5 of the 4.0 acres for manufactured gas production. In OPC's estimation, approximately 1.5 acres were never used for that purpose. OPC argues the Commission's ruling, that customers bear the cost of remediating all of the Cassidy Property, is contrary to the Court of Appeals' holding in *Centre Ins. Co. v. J.T.W.*, 397 Md. 71 (2007). There, the Court instructed that when engaged in statutory interpretation, a reviewing court should "avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Id*. at 81. OPC argues that the Commission's decision to include the cost of remediation for the Cassidy Property would be contrary to the plain meaning of PUA § 4-211 and common sense.

The Commission's response is the subdivision of the Cassidy Property into two parcels, one on which manufactured gas was produced and one parcel on which that activity did not occur solely to restrict remediation costs, would be to read restrictions into PUA § 4-211 that the General Assembly never intended to add. In the Commission's view, OPC's interpretation of PUA § 4-211(a)(2)(i) goes against well-established tenets of statutory interpretation. The Commission cites to *Bottini v. Department of Finance*, 450 Md. 177, 188 (2016), where the Court of Appeals unequivocally stated that when engaged in statutory interpretation, a reviewing court must "neither add nor delete words to a clear and

14

unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced subtle interpretation in an attempt to limit the statute's meaning." (internal citations omitted).

Columbia Gas argues that the cost to remediate the Cassidy Property sufficiently "relates" to the manufactured gas plant that Hagerstown Gas once operated there. Columbia Gas' argument is that OPC reads PUA § 4-211(a)(2)(i)'s language that remediation costs must "*relate[] to* the contamination of real property," to mean "*is limited to* the contamination of real property." Columbia Gas asserts that by re-defining "relates" to be restrictive, it renders the meaning of the words "relates to" "superfluous or nugatory." Columbia Gas urges us not to be beguiled by OPC's clever attempt to "rewrite the statute."

Further, Columbia Gas maintains the contamination is not solely limited to the 2.5 acres of the Cassidy Property that Hagerstown Gas formerly owned. Citing *Office of People's Counsel v. Maryland Public Service Commission*, 355 Md. 1 (1999), Columbia Gas maintains OPC's argument runs afoul of the very principles of statutory interpretation on which OPC relies, namely that a statute should not be read 'in a way that is inconsistent with, or ignores, common sense or logic.'" *Id*. at 23 (internal citations omitted). Here, according to Columbia Gas, "common sense or logic" dictates that over the span of decades, the contamination deposited over 70 years ago will spread throughout the entire area that comprised the Cassidy Property.

The Court of Appeals has instructed that when interpreting the meaning of a statute, our paramount duty is "to discern and carry out the intent of the legislature." *Blue v. Prince George's County*, 434 Md. 681, 689 (2013). *Kushell v. Dep't of Natural Resources*, 385

15

Md. 563, 576 (2005) ("The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature.") (citing *Collins v. State*, 383 Md. 684, 688 (2004)). To properly discern the legislature's intent, the Court has consistently instructed us that "[s]tatutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Adventist Health Care v. Maryland Health Care Comm'n*, 392 Md. 103, 124 n. 13 (2006) (internal quotation marks and citations omitted). *See Stevenson v. Edgefield Holdings, LLC*, 244 Md. App. 604 (2020).

When a statute's language is unambiguous, we need only to apply the statute as written, and our efforts to ascertain the legislature's intent end there. *Adventist Health Care*, 392 Md. at 125. In *Blue*, *supra*, the Court of Appeals explained,

> [t]ext is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. *Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute.* An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality.

*Blue*, 434 Md. at 689 (quoting *Town of Oxford v. Koste*, 204 Md. App. 578, 585 86 (2012), *aff'd*, 431 Md. 14 (2013) (citations omitted)) (emphasis supplied). We presume that the General Assembly has acted with full knowledge of prior legislation and construe the statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *Oakland*, 392 Md. at 316; *Mazor v. State Dep't of Correction*, 279 Md. 355, 360–61 (1977).

16

On the other hand, statutory language is ambiguous when it can be reasonably understood to have two different meanings. *Deville v. State*, 383 Md. 217, 223 (2004). We will resolve any ambiguity in light of the legislative history, caselaw, and statutory purpose. *Oakland*, 392 Md. at 316; *Comptroller v. Phillips*, 384 Md. 583, 591 (2005). We will examine the ordinary meaning of the language, as well as "how that language relates to the overall meaning, setting, and purpose of the act," resolved to avoid any unreasonable, illogical, or inconsistent interpretation of the statute. *Oakland*, 392 Md. at 316; *Gwin v. MVA*, 385 Md. 440, 462 (2005).

Finally, as the Court of Appeals recently noted in *Office of People's Counsel v. Maryland Public Service Commission*, 461 Md. 380, 392 (2018) PUA § 3-203 establishes a highly deferential standard. Under PUA § 3-203, we are required to find that the Commission's decision is presumptively correct absent clear evidence that some defect has affected the decision, among which are: unconstitutionality, a lack of statutory authority, or that the decision was arbitrary or capricious. Absent such a "clearly shown" defect, PUA § 3-203 commands that the Commission's ruling "shall be affirmed." [5] *Id*. at 392.

---

[5] Every final decision, order, or regulation of the Commission is *prima facie* correct and shall be affirmed unless clearly shown to be:
    (1) unconstitutional;
    (2) outside the statutory authority or jurisdiction of the Commission;
    (3) made on unlawful procedure;
    (4) arbitrary or capricious;
    (5) affected by other error of law; or
    (6) if the subject of review is an order entered in a contested proceeding after a hearing, unsupported by substantial evidence on the record considered as a whole. PUA § 3-203

With this standard in mind, first we note that the PULJ's findings and proposed order comprise more than 50 pages of text. The PULJ's report contains a history of the case, a recitation the parties' argument, and an analysis of those arguments coupled with the applicable statutory authority and caselaw. Second, we are cognizant of the fact that the PULJ reached his decision after a contested hearing where testimony and documentary evidence was voluminously produced.

Our review of the PULJ's findings reveals a comprehensive understanding of the issues, the positions of the parties, the costs that would be incurred by Columbia Gas' customers, as well as knowledge and application of the applicable law and statutes. We have no trouble determining that the PULJ's decision was well-reasoned. We therefore afford it great deference. *Severstal Sparrows Point,* 194 Md. App. at 610-11.

Further, we find nothing inappropriate in the Commission adopting the findings of the PULJ, since it was they who charged the PULJ with making those findings. *See* Commission Order 88923 at 1. Further, in its written order, the Commission sets forth the appropriate statutory authorities, including PUA § 4-211, the positions of the litigants and its own staff, and concludes that the PULJ's decision should be sustained. We note that the Commission made an independent assessment of the statute and found that it permitted Columbia Gas to remediate the entire Cassidy Property. We are constrained that the Commission's decision will not be disturbed on a basis of a factual question except upon clear and satisfactory evidence that it was unlawful and unreasonable. *Town of Easton*, 379 Md. at 31-32; *Severstal Sparrows Point,* 194 Md. App. at 610-11. We do not conclude that any of the essential facts are in dispute.

18

As for the Commission's interpretation of PUA § 4-211, which we review with the requisite deference to the Commission interpreting its own statute, *see* PUA § 3-203, we agree with the PULJ and the Commission; the statute is not ambiguous and does not require an exposition of legislative history. *Deville*, 383 Md. at 223. We, therefore, construe the statute "as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Oakland*, 392 Md. at 316. Further, we presume that the General Assembly "acted with full knowledge of the former statute," when it passed PUA § 4-211. *Id.*; *Mazor v. State Dep't of Correction*, 279 Md. 355, 360–61 (1977).

We now examine statute's provisions. PUA § 4-211(a)(1)(i-ii) states three requirements: (1) that the environmental remediation costs be "in response to a State or federal law, regulation or order," (2) that the contamination "relates" to real property, and (3) "the real property is or was used to provide manufactured or natural gas service to the gas company's customers or … predecessors." From our review of the record, it is undisputed that the Columbia Gas site is a tract of land on which Hagerstown Gas used to manufacture gas from 1887 to 1952 and which Columbia Gas has owned and operated since 1968. The site has been investigated numerous times since 1986 by the Maryland Department of Health and MDE for the presence in the soil of potentially hazardous by-products and waste from the manufacture of gas. The MDE traced the source of some of the contamination to a pond into which Hagerstown Gas for decades dumped waste from the process of manufacturing gas. That pond sat on the Cassidy Property, approximately 1.5 acres of which Columbia Gas acknowledges was not used in the manufacture of gas. We hold that these facts support the Commission's conclusion that: (1) the Columbia Gas'

19

remediation effort is in response to the investigations of the site by State and federal regulators, (2) the contamination relates to real property Columbia Gas owns, and (3) the property was used by Hagerstown Gas, Columbia Gas' predecessor, to manufacture gas for its customers.

OPC's interpretation of the statute is unwarranted.  The intransitive verb "relates," as used in PUA § 4-211, means "to have connection or reference."[6]  We conclude that this indicates that the Cassidy Property must have a connection to the manufacture of gas.  In our view, it does.  Nothing in the text of the statute requires severing a portion of the Cassidy Property, as OPC argues, since the site relates to the manufacture of natural gas. We agree with Columbia Gas' assessment that OPC's subdivision argument focuses only on the second prong of PUA § 4-211 – where the gas was manufactured – to the exclusion of the first prong -- that the contamination relate to the property.  Both prongs must be read together so as not to render either prong meaningless.  *Oakland*, 392 Md. at 316.  In this instance, we conclude that the Commission's interpretation of the statute is correct and affirm its findings.  *See* PUA § 3-203.

## II.    The Commission's Decision Did Not Violate PUA § 3-113

OPC posits that the Commission's decision was arbitrary and capricious because, in OPC's opinion, the Commission failed to "offer any explanation for its implicit rejection of OPC's argument regarding [PUA § 4-211]'s limitation on a utility's ability to recover environmental remediation expenses," in violation of PUA § 3-113.  Consequently, OPC

---

[6] The Oxford English Dictionary On-line: https://bit.ly/36hc3kr.

urges us to order a remand so that the Commission may more clearly state the rationale for its decision.

Favorably citing a series of cases including *Mehrling v. Nationwide Ins. Co.*, 371 Md. 40, 64 (2002); *Walker v. Department of Housing and Community Development*, 422 Md. 80, 106 (2011); *Blue Bird Cab Co. v. Md. Department of Employment Security*, 251 Md. 458, 466 (1968), each of which discussed the need for an administrative agency decision to state with clarity the findings and the conclusion of law on which it relied when rendering a decision, OPC asserts that the Commission's decision was conclusory. Indeed, OPC argues that the Commission's decision was so threadbare it was "even more deficient than the orders that necessitated remand in the above cases." Because, in OPC's view, the Commission's decision was capricious, OPC urges us send the decision back and require the Commission to "chronicle, in the record, full, complete and detailed findings of fact and conclusions of law."

The Commission responds that OPC's argument is misplaced. The Commission ratified the recommendations of the PULJ, to whom the Commission specifically delegated the task of fact-finding and making recommendations for an appropriate order. In the Commission's understanding of PUA § 3-113, "the rationale of the PULJ is sufficient without supplementation from the Commission." The Commission explains that PUA § 3-113 does not require it to "provide additional rationale for affirming a [p]roposed [o]rder on appeal if the PULJ's analysis is not deficient." Further, the Commission reminds us that OPC "must overcome a very deferential standard to rebut the presumption that the Commission exercised its discretion properly." *Office of People's Counsel*, 461 Md. at 392.

21

Citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co*., 463 U.S. 29 (1983), the Commission urges us to consider that the United States Supreme Court held that a court's review of an administrative decision, particularly a determination whether that decision was arbitrary or capricious, "is not an invitation for a court to second-guess an agency's judgment: 'a decision of less than ideal clarity' will be upheld 'if the agency's path may be reasonably discerned.'" The Commission asks, solely for the sake of argument, that even if the Commission's decision "ha[d] less than ideal clarity," reading the order as a whole reveals that it "fully contemplated the underlying facts and legal analyses to reach its decision to affirm the [PULJ's] [p]roposed [o]rder."

For its part, Columbia Gas argues that the Commission adequately explained its rejection of OPC's strained interpretation of PUA § 4-211. Further, Columbia Gas argues that OPC provides no relevant legal authority to support its position that the Commission acted arbitrarily. Citing *Mehrling v. Nationwide Insurance Co.*, 371 Md. 40, 65 (2002), Columbia Gas asserts that in reviewing an appeal from an administrative decision "one must be able to discern from the record the facts found, the law applied, and the relationship between the two." And in Columbia Gas' opinion, the Commission's decision "easily complies with that standard," since the Commission fully explained why it rejected OPC's interpretation of PUA § 4-211. Consequently, Columbia Gas asserts the decision is neither arbitrary nor capricious in that the facts regarding the Cassidy Property and the applicable law were fully discussed.

We begin our analysis with Maryland Code, (1998, Repl. Vol. 2019), PUA § 3-113(a), which states:

> A decision and order of the Commission in a contested proceeding shall:
>
> (1) Be based on consideration of the record;
> (2) Be in writing
> (3) State the grounds for the conclusions of the Commission; and
> (4) In the case of a complaint proceeding between two public service companies, be issued within 180 days after the close of the record.

OPC contends that the Commission neglected to fully state the "grounds and conclusions" for why it rejected OPC's argument that the Cassidy Property should be apportioned where only that part of the property on which gas was manufactured should be used in determining a rate increase. Because the Commission failed to do this, OPC argues the decision was arbitrary or capricious.

Federal jurisprudence has informed Maryland's appellate decisions as to whether an agency's decision is arbitrary or capricious. *See Harvey v. Marshall*, 389 Md. 243 (2005). Federal appellate review of administrative decisions must show the agency articulated a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). While the reviewing court, "may not supply a reasoned basis for the agency's action that the agency itself has not given, [appellate review] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285-86 (1974). In *Alaska Dep't. of Environmental Conservation v. E.P.A.*, 540 U.S. 461 (2004), the United States Supreme Court, finding that "the E.P.A.'s three skeletal orders" were neither arbitrary nor capricious, stated that the test to be used is, "whether the Agency's action was 'arbitrary, capricious, an abuse of discretion, or

23

otherwise not in accordance with law.' Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Id*. at 496-97 (quoting *Bowman Trucking*, *supra*.)

The Court of Appeals has characterized Maryland's "arbitrary or capricious" standard as similar to that found in federal administrative law, in that one challenging an agency decision must show that the agency exercised its discretion unreasonably or without a rational basis. *Harvey, supra*, 389 Md. at 297-304. "Whether an agency decision is arbitrary or capricious also depends, to some extent, on the degree of discretion that the Legislature has conferred on the particular agency with respect to the particular decision." *Communication Workers of America v. Maryland Public Service Commission*, 424 Md. 418, 434 (2012). "[W]hen an agency acts in its discretionary capacity, it is taking actions that are specific to its mandate and expertise and, unlike conclusions of law or findings of fact, have a non-judicial nature ... [for which] we owe a higher level of deference." *Id*. (quotation marks and citation omitted). Further, determining whether an agency decision was arbitrary or capricious is "a deferential standard in which a court may consider such things as the agency's expertise, policy goals stated in pertinent statutes or regulations, consistency with the agency's past decisions, and whether it is possible to follow the path of the agency's reasoning." *Maryland Office of People's Counsel*, 461 Md. at 405.

Our task then is to determine "whether it is possible to follow the path of the [Commission's] reasoning" in reaching its decision. On the record before us, we may do so.

24

Here, the Commission's decision is a twenty-page document dated November 21, 2018. Section "A" is a detailed recitation of the PULJ's findings, including a history of the Cassidy Property, the Commission's findings and order in *Columbia I*, as well as mention of this Court's 2015 decision. The discussion also cites and analyzes PUA § 4-211, focusing on OPC's and Columbia Gas' arguments at the hearing. Specifically, the Commission discusses each of the three prongs of PUA 4-211 and analyzes the PULJ's findings on each prong. Section "B" of the report discusses OPC's contentions before the Commission, in particular, OPC's insistence that the remediation costs benefit ratepayers. Significantly, the Commission sets forth OPC's argument that the cost of remediation should be limited to the portions of the Cassidy Property that were used to manufacture gas. Section "C" details the Commission's staff's position, which rejected OPC's argument that the "used and useful" standard still exists. The staff notes that the General Assembly specifically drafted PUA § 4-211 to omit that language. The Commission's staff rejected OPC's argument because in their opinion to do as OPC wished would neuter the statute. In their words, "[a] statute cannot be interpreted to be meaningless." Section "D" explains Columbia Gas' reply to OPC's argument. Finally, in section "E," the Commission explains its decision. Essentially, the Commission found that PUA § 4-211 was unambiguous. In the Commission's view, the legislature specifically removed the "used and useful" language from the statute to allow Columbia Gas to recover the remediation costs for the Cassidy Property. The Commission agreed with its staff, finding that to read the statute as OPC asks would, essentially, render it a nullity. The Commission affirmed

25

the PULJ's recommendations and approved the rate increase including the remediation costs for the Cassidy Property.

While OPC correctly states that the Commission did not explicitly address OPC's argument about limiting the remediation costs in section "E" of its decision, there is no doubt that the Commission considered OPC's argument in those sections of its report that detailed OPC's position and the Commission's staff's reply. We hold that the Commission need not have explained in detail the basis for its decision when its rationale can be readily discerned after reading the entire order. The Court of Appeals recently reached the same holding in *Maryland Office People's Counsel*, *supra*, finding the Commission's decision there was not arbitrary or capricious, despite a similar challenge from OPC that the Commission "failed to adequately discuss the potential harm of [an electrical company merger] to consumers with respect to alternative energy generation." *Maryland Office of People's Counsel*, 461 Md. at 406. The Court determined that the Commission, when rendering a decision under PUA § 3-113, is "not required to repeat itself in its fact findings and analysis when a reasoning mind can readily grasp the connection between related issues." *Id*. Here, the Commission recited and adopted the factual findings and conclusions of law that the PULJ rendered. Those findings rejected OPC's interpretation of PUA § 4-211.

Additionally, the cases offered by OPC in support of its position: *Mehrling, Walker,* and *Blue Bird Cab Co., supra,* are all unavailing. The three cases on which OPC relies turned on application of the Maryland Administrative Procedure Act ("APA"). As we said in the first section of this opinion, the APA does not guide the proceedings here. Instead,

26

PUA § 3-203, with a much more deferential standard of review, controls.

Each of the cases on which OPC relies may be further distinguished. *Mehrling* concerned the appellant's challenge to her dismissal as an insurance agent by filing a complaint with the Maryland Insurance Agency ("MIA"). *Mehrling*, 371 Md. at 45. The MIA adopted the recommendations of the administrative law judge ("ALJ") of the Office of Administrative Hearings ("OAH") dismissing Mehrling's complaint on the ground that Mehrling had been divested of standing due to her pending bankruptcy. *Id*. at 48. The ALJ, however, was apparently unaware that Mehrling's bankruptcy case had been dismissed five days before his decision. *Id*. The Associate Deputy Commissioner nonetheless adopted the ALJ's recommended decision to dismiss Mehrling's complaint for lack of standing. *Id*. at 48-49. Mehrling's subsequent motion for reconsideration was denied. *Id*. A request for judicial review affirmed the MIA. *Id*. at 50. In an unreported opinion, we affirmed. *Id.* at 50-51. The Court of Appeals concluded that the record was not clear that the Deputy Insurance Commissioner considered the fact that the bankruptcy had been dismissed before the ALJ reached its decision. *Id*. at 65. That the Deputy Insurance Commissioner did not mention that fact led the Court to suspect that the Deputy Insurance Commissioner was unaware that Mehrling's bankruptcy had been dismissed. *Id*. Consequently, the Court remanded "to the MIA to prepare legally adequate findings of fact and conclusions of law based on the administrative record as a whole." *Id*. at 67. In contrast, here, none of the parties claims the record is incomplete. The PULJ discussed OPC's arguments about the subdivision of land and rejected them. Further, the PULJ and the Commission discussed and considered the relevant facts and the law.

27

For similar reasons, the decision in *Walker* is also inapposite. There, the issue was whether the recipient of subsidized housing vouchers could have a contested hearing before the Department of Housing and Community Development in accordance with the APA. *Walker*, 422 Md. at 82. Concluding that Walker had a right to a contested proceeding and to have the agency explain its findings, the Court of Appeals, citing *Mehrling*, stated, "[w]e have explained time and time again, 'not only the importance but the necessity that administrative agencies resolve all significant conflicts in the evidence and then chronicle, in the record, full, complete and detailed findings of fact and conclusions of law.'" *Id.* at 106. Here, it is beyond cavil that the parties participated in a *contested* evidentiary hearing before the PULJ. As discussed, we have concluded the PULJ resolved the one disputed issue as raised by OPC and gave a "complete and detailed findings of fact and conclusions of law."

*Blue Bird Cab* concerned a decision by the Department of Employment Security that taxicab drivers who operated cabs owned by the Blue Bird Cab Company were employees under the then-applicable unemployment insurance law, so that those drivers had to report their services and Blue Bird had to pay the drivers' insurance contributions. *Blue Bird Cab*, 251 Md. at 459. Blue Bird contested the Board of Appeals' finding that an employer was responsible for its drivers' insurance payments. *Id.* On judicial review, the circuit court affirmed the Department of Employment Security's decision. *Id.* at 459-60. On writ of certiorari, the Court of Appeals considered Blue Bird Cab's contention that the Board of Appeals failed to make findings in reaching its decision. *Id.* at 466. The Court held that the facts were undisputed as the parties had reached a stipulation of the essential

28

facts. *Id.* The Court held that because the Board of Appeals adopted the facts as stipulated, there was no need for the Board to make separate findings. *Id.* The Court subsequently affirmed the circuit court and the Board of Appeals. *Id.* at 467.

OPC specifically cites *Blue Bird Cab* for this language the Court used: "A fundamental requirement of due process of law in a quasi-judicial proceeding is the right of the parties to be apprised of the facts relied upon by the tribunal in its decision." *Id.* at 466. We certainly agree. Just as the Court of Appeals found no dispute of fact there, so too are the facts undisputed here. The difference, however, is that here the controversy is not over the facts but, rather, interpretation of the provisions of PUA § 4-211. The issue of whether the Commission should approve a rate increase that included remediation of the entire area that encompassed the Cassidy Property was put before the PULJ and, ultimately, the Commission. The disagreement is that the Commission's interpretation of the statute differs from that of OPC.

We conclude the Commission's decision was neither arbitrary nor capricious. In reaching its decision, the Commission focused its attention on the statutory provisions in question, thoroughly addressed the relevant issues, and reached its interpretation of PUA 4-211 through sound reasoning. One may readily "follow the path of the [Commission's] reasoning" in approving this rate increase. *Maryland Office of People's Counsel*, 355 Md. at 17. We affirm.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**